WILHELM ADOLPH BENEDIX DIEDERICH, Appellee, v. TRI-CITY RAILWAY COMPANY, Appellant.

No. 42622.

FEBRUARY 12, 1935.

588

Lane & Waterman, for appellant.

Bush & Bush, for appellee.

MITCHELL, J.—Wilhelm Diederich was a resident of Davenport, Iowa, and employed by the Tri-City Railroad Company of Iowa as a motorman on one of the street cars which the company operated. He had held the position of street car operator or motorman for about thirty years.

It is stipulated in the record that on May 21, 1930, Diederich suffered an accidental injury to his person, which arose out of and in the course of his employment with appellant, and at the time thereof he was working seven days per week and received as wages per day the sum of $5.27. The accident occurred near the intersection of Spring and East River streets, in Davenport, Iowa. It appears that while he was acting in his capacity as motorman, the street car he was operating passed under a viaduct on East River street, the trolley jumped off the wire, and the rope became unfastened. In order to replace the trolley Diederich had to climb up the steps to the top of the street car, and, while replacing the trolley, he received a shock which caused him to fall from the top of the street car to the paved street below. The fall rendered him unconscious. He was helped to the doctor's office, and from there to the hospital, where certain X-rays were taken. For six days he remained in the hospital, when he was taken home on a stretcher and was thereafter confined in bed continuously for six weeks. After he was able to be up he took heat treatments and then was taken to the hospital, where a plaster cast was applied to and kept on his body for six weeks. He remained under the doctor's care for a period of about seven months, and thereafter was examined at various

times by physicians. The medical witnesses seemed to agree that appellee had suffered a fracture of the first lumbar vertebra, the injury being described by some witnesses as a compression fracture, meaning that the vertebra after being fractured was compressed or pushed together. The formation of new bone had caused the first lumbar vertebra to fuse or join with the twelfth thoracic vertebra immediately above it, and with the second lumbar vertebra immediately below it. The resulting fixation is permanent, and causes the three vertebræ to function as a single unit. There is no question but that appellee suffered a great amount of pain; that he has and always will have a stiff back, which limits his ability to turn and bend.

On the 30th day of June, 1931, the appellee filed with the Iowa Industrial Commissioner his petition for arbitration, in which he claimed he was totally and permanently disabled. To this the appellant filed an answer, denying that the claimant was totally and permanently disabled. A hearing was held before the Honorable Ralph Young, Deputy Industrial Commissioner, and a decision was rendered, in which the appellant was ordered to pay the claimant $15 per week for 100 weeks, including the compensation already paid in the case.

Thereafter, on the 15th day of June, 1932, the appellee filed with the Iowa Industrial Commissioner an application for reopening of the case, claiming that he was totally and permanently disabled. An answer was filed by the appellant company denying this, and a hearing was had before the Deputy Industrial Commissioner, in which he increased the disability from twenty-five per cent permanent disability to thirty per cent.

From this ruling the appellee appealed to the district court of Scott county. That court, after due consideration, entered an order reversing the decision of the Industrial Commissioner, and entered judgment against the Tri-City Railroad Company for additional compensation at the rate of $15 per week for the remainder of 400 weeks, as provided by Code, section 1395, after allowing credit for the 99 payments theretofore made under the original order of the commissioner.

The railroad company, being dissatisfied with the judgment and order of the district court, has appealed to this court.

The appellant assigned as error that the commissioner's findings of fact are conclusive upon the lower court, and the district

court had no jurisdiction to review the evidence and to make findings.

In a very recent decision, this court said, in the case of Alm-quist v. Shenandoah Nurseries, 218 Iowa 724, at page 728, 254 N. W. 35, [94 A. L. R. 573]:

"If the evidence upon the point in question is in conflict, then, of course, the finding of the industrial commissioner is binding on this court. * * * But, on the other hand, the courts may interfere with the findings of the industrial commissioner under the circumstances authorized by section 1453 of the 1931 Code."

The court then quoted a part of that section, and said:

"So, if, as contemplated by the statute just quoted, the evidence does not sustain the conclusion reached by the industrial commissioner, then the courts may set aside, modify, or reverse his ruling. Arthur v. Marble Rock Consolidated School District, 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; Petersen v. Corno Mills Co., 216 Iowa 894, 249 N. W. 408; Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516."

On page 729 it is said:

"To illustrate, we said in the Tunnicliff case, reading on page 170: 'There is no merit in appellant's contention that the findings of fact of the industrial commissioner are conclusive. As we have said, there was no conflict in the evidence; and if the facts found by the commissioner do not support the order made by him, or if there is not sufficient competent evidence to support the finding, the order based thereon may be reviewed and set aside by the court.'"

On the same page the court said:

"When the industrial commissioner's finding, however, is not supported by the evidence, and when, on the other hand, the evidence is without conflict and all of it is against the conclusion reached by him, then the courts may interfere and modify, set aside, or reverse his ruling, as shown by the cases above indicated."

The court then fully reviewed the evidence, and said:

"Nowhere in the record is there any dispute on the material facts. Consequently the appellee, without controversy, proved that

there was a personal injury which caused the employee's death, and that the same arose out of and in the course of the employee's employment. Hence, the commissioner erred as a matter of law in finding that she was not entitled to compensation, and the district court properly reversed him."

Thus we find that this court has laid down the rule that if there is not sufficient competent evidence to support the findings of the industrial commissioner an order based thereon may be reviewed and set aside by the court.

A careful review of the evidence in the case at bar shows that there is no conflict; that there was no competent evidence to show that appellee could operate a street car sufficiently well to hold a position as a motorman; and there was no competent evidence that there was any other gainful employment which he would be able to enter and carry on successfully. Obviously, the commissioner's decision must have been based on a finding that the compensation statute contemplated payment in proportion to functional disability rather than in proportion to industrial disability. This construction was a matter of law, which is reviewable by the court. These findings were made by him, and the fact that they were made clearly gave the lower court the right to review the case and to determine whether they were well founded.

The principal and the most important question in the case at bar is to determine the meaning of "disability" as used in the Iowa Compensation Law. If "disability" means loss of earning ability, the decision of the district court must be affirmed. If it means mere loss of functional bodily power, the decision of the industrial commissioner must be sustained and the lower court reversed.

Code, section 1395, provides:

"For an injury causing permanent total disability, the employer shall pay the weekly compensation during the period of his disability, not, however, beyond four hundred weeks."

What is "permanent total disability"? Does this clause refer to "functional disability" or to "industrial disability"?

For clearness we shall use the term "industrial disability" as referring to disability from carrying on a gainful occupation—inability to earn wages. By "functional disability" we shall refer

to the disability to perform one or more of the physical movements which a normal human being can perform.

Which did the legislature have in mind in passing this section, "industrial disability" or "functional disability"? Was the legislature seeking to provide means to make up the loss of earnings due to injuries or was it endeavoring to compensate for loss of human powers or functions?

Code, section 1390, provides:

"In all cases where an employee receives a personal injury for which compensation * * * is payable, such compensation shall be upon the basis of sixty per cent per week of the average weekly earnings * * *"

Code, section 1397, provides that:

"Compensation shall be computed on the basis of the annual earnings which the injured person received * * *"

Code, section 1433, provides that:

"All books, records, and pay rolls of the employers, showing or reflecting in any way upon the amount of wage expenditure of such employers, shall always be open for inspection by the industrial commissioner * * *"

Code, section 1393, provides for the commencement of compensation except as to injuries resulting in "permanent partial disability" and provides that:

"If the period of incapacity extends beyond the thirty-fifth day following the date of injury, then the compensation for the fifth week shall be increased * * *"

This section contains four paragraphs, all of which refer to the "period of incapacity" and use the term as synonymous with "disability".

Code, section 1394, provides the time of commencement for injury causing "temporary disability * * * during the period of such disability * * *"

We now come to Code, section 1396, which governs "permanent partial disability". This section provides certain specific periods of recovery for certain specific injuries. For instance, for the loss of a thumb, weekly compensation during forty weeks; "the loss of

both arms, or both hands, or both feet, or both legs, or both eyes, or of any two thereof * * * shall equal permanent total disability, to be compensated as such."

It is obvious that "disability" as here used cannot refer to mere "functional disability", for a man might lose one foot, or he might lose one arm and one hand, or one leg and one foot, or one eye and one foot, and still retain all of his mental powers and still retain at least seventy-five per cent of his "functional ability".

It is therefore plain that the legislature intended the term "disability" to mean "industrial disability" or loss of earning capacity and not a mere "functional disability" to be computed in terms of percentages of the total physical and mental ability of a normal man.

This accords with the construction placed upon this act by this court in Moses v. National Union Coal Mining Co., 194 Iowa 819, at page 823, 184 N. W. 746, where it is said:

"The word 'disability' as here used certainly means impairment or lessening of earning capacity, and not the loss of a member or the permanent loss of the use thereof. * * * The statute does not create a claim for damages, but provides for compensation based upon a certain percentage of the wages being earned."

In the case at bar it is clear that the commissioner based his decision upon a consideration of functional disability, rather than upon industrial disability. The commissioner in November of 1931 entered an order that the claimant was permanently disabled to the amount of twenty-five per cent. Then in December of 1932 he entered an order that the claimant was disabled to the amount of thirty per cent. The record shows that the claimant was fifty-nine years of age. That for a period of thirty years he had been employed as a street car motorman; that he was a man of little or no education; that the injury which he suffered was an injury to his back which would limit him from all kinds of physical work. It is true the record shows that he could get around; that he could walk and ride in street cars, but that due to the injury which he suffered he had a stiff back, which limited his ability to perform all kinds of work that required physical exertion. Appellee claims he still suffers pain. There is no denial of this in the record. There is no showing in the record of any kind of a position that the claimant would have been able to have held after the injury. True,

594

there is evidence of the medical men that appellee's disability is only partial—twenty-five to thirty per cent of the one hundred per cent perfect man. But the Compensation Law was passed for the purpose of compensating the working man when injured. The loss which this claimant suffered due to the injury which he received while in the employ of the company is the inability to carry on the work he was doing prior to the time of the injury, or any work which he could perform. This man at fifty-nine years of age, after thirty years as a street car motorman, with little education, cannot find or hold a position that would not require some manual labor, and, of course, due to the condition of his back, he cannot perform such work. To say that he might become a stenographer or a lawyer or a clerk or a bookkeeper is to suppose the impossible, for a fifty-nine-year old man, with no education, is not capable of securing or filling any such position. His disability may be only a twenty-five or thirty per cent disability compared with the one hundred per cent perfect man, but, from the standpoint of his ability to go back to work to earn a living for himself and his family, his disability is a total disability, for he is not able again to operate the street car and perform the work which the company demanded of him prior to the time of the accident.

It follows, therefore, that the judgment and decree of the lower court is right, and the same must be, and it is hereby, affirmed.

ANDERSON, C. J., and KINTZINGER, HAMILTON, and RICHARDS, JJ., concur.