AUGUST WICHERS, Appellee, v. McKEE BUTTON COMPANY et al., Appellants.

No. 43935.

JUNE 15, 1937.

Huebner & Huebner, for appellants.

Frank Drake and F. W. Devitt, for appellee.

SAGER, J.—Contrary to our usual practice of stating the facts preliminary to examining the legal principles we have to

announce, we have deemed it conducive to brevity to state here first the rules which govern the case, as we see them.

▌▌▌ That we have the right, in a proper case, to review the findings of the industrial commissioner may not seriously be questioned. In Tunnicliff v. Bettendorf, 204 Iowa 168, at page 170, 214 N. W. 516, 517, we said:

· ''There is no merit in appellant's contention that the findings of fact of the industrial commissioner are conclusive. As we have said, there was no conflict in the evidence; and if the facts found by the commissioner do not support the order made by him, or if there is not sufficient competent evidence to support the finding, the order based thereon may be reviewed and set aside by the court. Section 1453, Code of 1924; [citing cases]. It is only where there is a conflict in the evidence that the findings of fact of the commissioner are conclusive.'' [Citing cases.]

The same principles are re-affirmed in Enfield v. Certain-Teed Prod. Co., 211 Iowa 1004, at page 1008, 233 N. W. 141, 143, wherein we said:

'' 'The duty of determining where the preponderance of evidence lies, under the records in cases of this kind, is the task imposed by statute upon the state industrial commissioner. If there is no fraud, and that official acts with power, and not in excess thereof, and his findings support the order and decree, it cannot be interfered with on appeal to the district court unless ''there is not sufficient competent evidence in the record to warrant the making of the order or decision.'' ' [Citing cases.]

''While acting within the limits of his jurisdiction, the industrial commissioner cannot be interfered with by the district court or this tribunal. * * * Interference by the courts with the state industrial commissioner under those circumstances amounts to the usurpation of power. [Citing cases.] On the other hand, if there are not sufficient facts in the record to support the findings of the industrial commissioner, the courts may review and set aside his action. [Citing cases.] Obviously, the absence of a conflict in the evidence is not enough to give the courts jurisdiction in the premises. Perhaps a given record might not contain conflicting evidence, yet the proof, although one-sided, may be amply sufficient to support the commissioner's finding. Con-

sequently, claimant has not met the requirements to set aside the commissioner's finding by merely alleging that there is no conflict in the evidence. * * * the commissioner had before him substantial evidence upon which to base his findings, and consequently, under those circumstances, that official's conclusions are binding on the courts.'' (Citing cases.)

One other quotation from our former decisions will be sufficient. In Kent v. Kent, 202 Iowa 1044, at page 1046, 208 N. W. 709, 710, we announced the following:

''The finding of the commissioner upon disputed facts is on the same footing as the verdict of a jury. [Citing cases.] His finding is conclusive, if the facts found by him support the finding, and if there is competent evidence to warrant the order made. Section 17, chapter 270, Acts of the Thirty-seventh General Assembly;'' (and cases cited).

The principles announced in the foregoing decisions were again stated in Almquist v. Shenandoah Nurseries, 218 Iowa 724, at pages 728, 729, 254 N. W. 35.

With these guides to point the way, we turn our attention to the facts which can be found in the record.

■■■ Wichers, a man 52 years of age, with no education in the English language and an eighth grade education in German schools, had, during all his active life, been engaged in common labor. At the time of his injury he had been employed by the appellant McKee Button Company, doing such heavy work as wheeling, carrying, and shoveling shells out of cars into bins. In this work he carried baskets of shells weighing from 68 to 80 pounds, and wheeled loads weighing from 150 to 185 pounds. While engaged in wheeling shells he fell from a platform about 3 feet high, and struck his left knee on a concrete floor, sustaining the injuries out of which this cause arises.

Appellee asserts that before the accident he had never suffered from arthritis. After it, he testifies, that he was compelled to walk with crutches and canes for a considerable period, and that as a result thereof, having been discharged by the button company, he was unable to get another job because of his inability to work as he had done before. To use his own expression: ''I never can do that work I did before I sustained this injury.'' Following the injury, appellee's knee did not

have quite the flexibility nor the weight-bearing ability it had before. After the injury appellee returned to work as a shell sorter August 4, 1933, and worked full time until September 29, 1934. This work, however, he was able to do while sitting. During this period his knee pained him, but not enough to keep him from doing his work, and at one time he expressed the thought that if he had a job in which he could walk a bit he could do it.

In November 1934, Dr. Bryan, his physician, examined appellee's knee, and in his testimony gave a minute description of the conditions he found. His conclusions are summed up in this statement:

"The knee as it now stands is permanently injured; anatomically the degree of injury in my opinion is a matter of 25 or 35%. Functionally it is greater than 50%; industrially for the same type of labor for which he was employed, it is practically nil."

This physician examined the knee again the day he testified and found a slight difference in the circumference of the injured and the other knee. At the time the knee was as well as it, in his opinion, would be, and there had been a perfect healing of the patella. The strength of the knee at that time had not been fully restored, due to the fact that the weight a flexed knee can bear is not as great as that of one capable of full extension. On cross-examination this witness testified that whether the knee would stay painful was problematical, and that it was just as reasonable as that it might not; that appellee's whole disability lies in the impaired flexion and extension and pain in the knee; that the injury was confined wholly to the knee.

Contrary to the impairment indicated by the testimony of appellee and of his physician, Dr. Bessmer, on behalf of appellants, while disclosing some impairment of motion in the left knee says that, so far as appellee's walking is concerned he would have very little difficulty, and apparently had little trouble in walking about this witness's office while there for examination in March 1933, and in December 1934. In the opinion of this expert, the weight-bearing capacity of the left leg has not been interfered with, and he could do work that would require walking and standing, and he could not see how the injury would interfere with his lifting or carrying things.

He says that appellee told him the only work he could not do was the hardest kind of work. In continuing his testimony this witness expressed the view that appellee would be capable of wheeling shells weighing up to 175 pounds, except for a rheumatic or arthritic condition which might become better or worse. His injury had nothing to do with his arthritis, and any difficulties which may have developed from his injuries have ceased long ago. The conclusion reached by this witness was that there was a functional impairment of the knee not exceeding 38 per cent.

One Dr. Fay, called by appellants, examined claimant-appellee about four months after the injury, and testified that the latter made various complaints of pain in the entire knee, and of its constancy, especially while on foot and at night, and that claimant said the knee was stiff and crooked and that he could not walk very far even with a cane. His own examination of the patient discloses that he limped on the left side and walked with a cane; that there were 10 degrees lacking of full extension and a flexion of 20 degrees beyond a right angle; that the patient's movements were all stiff and that there appeared to be additional stiffness in the left hip joint, limiting full extension of that joint. It might be said also that this doctor went further and said that X-ray examination disclosed slight osteoarthritis of the knee joint, no evidence of injury to the hip, and that the arthritis was more marked in his left hip joint and the lower lumbar spine and sacroiliacs. He sums up his conclusions as to the claimant's disability that it is "15% to 20% of the loss of the leg."

The testimony of Dr. Harnagle, one of appellants' witnesses, is substantially to the same effect as that of the other physicians called by appellants, but he goes somewhat further in his conclusions as to what work appellee could do notwithstanding his injuries,—in fact, goes to the extent of saying that, so far as his examination went, he was of the opinion that appellee could wheel and carry the same loads as he had before. He, too, takes the position that the arthritis with which he found claimant suffering was in nowise due to the condition of the hip. He thought that the appellee was suffering no pain and made no complaint on that score, although admitting that this might be due to the temperament of the patient. On the whole, if his testimony as given was accepted as final, claimant suffered no substantial

858

injury at all beyond a functional disability of from 15 to 20 per cent in the left leg.

It goes without saying that we have attempted to do no more than to notice the high spots in the testimony. A consideration of all the evidence persuades us to hold, as we do, that the record was in such a state of conflict that the decision of appellee's rights thereunder rested, under our statute and previous holdings, entirely with the industrial commissioner; and, unless we are prepared to hold, which we are not, that the testimony of appellants' physicians is to be entirely rejected because partly in the realm of expert opinion, the finding of the commissioner was entirely warranted. We do not overlook the fact that appellee gave a more minute account of his disability, his pain and impairment, than we have set out, but what we have said sufficiently indicates that the whole matter was vested by law in the decision of the commissioner and we may not interfere. Since the holding of the trial court was contrary to the views expressed, we are under the necessity of reversing and remanding the cause for such further judgment entries as may be necessary to carry out the findings and judgment of the industrial commissioner.—Reversed and remanded.

RICHARDS, C. J., and ANDERSON, PARSONS, KINTZINGER, HAMILTON, and STIGER, JJ., concur.

DONEGAN, J., takes no part.