FRANK DAILEY, Appellee, v. POOLEY LUMBER COMPANY et al., Appellants.

No. 46253.

Hallagan, Fountain, Steward & Cless, of Des Moines, for appellants.

James H. Graven and Galen W. Hesalroad, both of Greene, for appellee.

Smith, J.— The ultimate question here may be briefly stated: Is appellee to be compensated under the schedule of specific coverages found in section 1396, Code of Iowa, 1939, (specifically under paragraphs 15 and 20 of said section), or for permanent total disability under section 1395?

The injury occurred in 1936 but the applicable statutory provisions were the same then as in the present Code of 1939. Our references will accordingly be to the latter. Appellee, while in the employ of defendant Pooley Lumber Company, and in the course of his said employment, suffered an injury consisting of a fracture of the surgical neck of the right femur. Whether there were further injuries to be considered is in controversy.

His right to compensation is unquestioned and the basic rate has been fixed by agreement. He has been paid weekly

benefits at this agreed rate for a period of 224 weeks. If his present contention is upheld he will be entitled to further payments to make a total of 400 weeks. Code section 1395. Appellants deny his claim for further compensation and say he was originally entitled to 200 weeks only (Code section 1396, paragraphs 15 and 20), and should be required to refund all he has been paid beyond that time, overpayment having been made through inadvertence and mutual mistake.

As the trial court affirmed the finding of the commissioner allowing appellee full 400-weeks' compensation for permanent total disability, our reference will be direct to the record made before the commissioner and to his decision as the decision of the trial court. He sums up his finding of fact concerning the extent of injury as follows:

"The evidence reveals that due to the injury in question, claimant suffered a fracture of the surgical neck of the right femur within the capsular ligaments of the right hip joint, that there is considerable absorption of the bone, and a marked shortening of the leg due to a displacement of the fractured fragments, with a resulting compensatory tilting of the pelvis and curvature of the spine. Claimant has recovered from the injuries to his head and ribs."

I. We have first to determine whether appellee's injuries fall within the schedule. If they do, we are not concerned with the question of the extent of disability. The compensation in that event is definitely fixed according to the loss of use of the particular member. The very purpose of the schedule is to make certain the amount of compensation in the case of specific injuries and to avoid controversies. Schell v. Central Engineering Co., 232 Iowa 421, 4 N. W. 2d 399, 401, 143 A. L. R. 576, citing Brugioni v. Saylor Coal Co., 198 Iowa 135, 197 N. W. 470. See, also, Moses v. National Union Coal Mining Co., 194 Iowa 819, 824, 825, 184 N. W. 746; Soukup v. Shores Co., 222 Iowa 272, 277, 278, 268 N. W. 598.

Paragraph 15 of Code section 1396 is as follows:

"15. The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg,

and the compensation therefor shall be weekly compensation during two hundred weeks.''

The commissioner, in his decision and award, points out that paragraph 15, in and of itself, does not apply because there has been no loss of the leg within the meaning of the paragraph, as there has been no amputation, but that if the injuries of claimant are within the disabilities scheduled in that paragraph, then paragraph 20 of Code section 1396 provides the basis for determining the extent of disability. See, as bearing on this pronouncement, Moses v. National Union Coal Mining Co., supra. Said paragraph 20, sometimes called the ''loss of use'' subsection, provides:

''20. In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule.''

We have no doubt of our right to review the commissioner's decision that claimant's injuries do not fall within paragraphs 15 and 20 just quoted. That decision in part clearly involved a conclusion of law in that it indulged in a construction of the pertinent statutory provisions.

Paragraph 15 of Code section 1396 seems never to have been judicially construed. However, paragraph 13 of the same Code section has identical language, except it is applicable to the arm instead of to the leg, and we have had occasion to examine it. Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 612, 206 N. W. 146, 148.

The injury in the cited case was loss of the arm at the juncture of the lower third with the middle third of the humerus. We held there that, as the schedule provided the loss of two thirds of that part of the arm between the shoulder joint and the elbow joint should equal the loss of an arm, the commissioner should determine ''how much should be added to the hand schedule, and how much deducted from the arm schedule, in arriving at the compensation to be allowed.'' In other words, the loss being of something *less* than two thirds of the humerus

and of more than a hand, the compensation should be adjusted accordingly.

It is manifest this decision does not materially help us in the instant case. We have here a loss of *more* instead of *less* than "two-thirds of that part of a leg between the hip joint and the knee joint." The commissioner construed the schedule as defining a "legal leg" (as distinguished from the "anatomical" leg), "ending at a point two-thirds of the distance above the knee joint." From that premise he reasons that the loss of *more* than two thirds of the femur is a loss of *more* than a leg and therefore not covered by the schedule. He points out the use of the word "more" in paragraph 7 of Code section 1396 as illustrative of his argument, and reasons that because the word "more" or its equivalent does not occur in paragraph 15, the only "loss of leg" covered by the schedule is the one expressly described as "equal" to the loss of a leg.

We cannot agree with this interpretation of the statute. It is true the schedule does not anywhere in express language fix the compensation for the loss of an entire "anatomical" leg or for any part thereof that includes *more* than two thirds of the femur. But the implication is clear that loss of an *entire* leg was intended to be made compensable the same as "the loss of two-thirds of that part * * * between the hip joint and the knee joint." The statute says one shall *equal* the other. We cannot assume the legislature would provide different bases of compensation for "equal" injuries. It seems more logical to interpret the statute as providing a minimum that would be compensable the same as an entire leg. A loss of that minimum or any greater part up to and including the entire leg will be compensated during 200 weeks.

Appellee argues that the word "between" in said paragraph 15 excludes the points which mark the boundaries of the area or space described—in effect, that the hip joint is not included in the schedule. We do not think the language used was intended to fix or limit the definition of a leg. Rather, it was for the purpose of defining a certain portion of the leg that would be considered *equal* to the whole leg. Neither the hip joint nor the knee joint was referred to as defining the

extent of the leg. We agree with the commissioner in rejecting appellee's contention on this point.

■ II. The commissioner, however, found as a fact that there was damage to the articular surface of the acetabulum or socket of the hip joint, and a permanent tilting of the pelvis, representing a lowering of the right side of the pelvis, "accomplished through relative compensatory changes in the two sacro-iliac and the lumbo-sacral joints of the pelvis"; also "a compensatory curvature of the lumbar or lower spine due to the changed position of the pelvis."

This finding implies injury additional to the mere fracture of the neck of the femur—in other words, injury not confined to the leg. The evidence is sufficient to support it. It seems clear the commissioner was justified in his conclusion that these changes are "of a permanent nature and cause physical functional impairment in addition to the impairments found in and about the right hip joint."

The testimony of both Dr. Fox and Dr. McLeod is to the effect that there has been no union of a solid bony character and that there has resulted "absorption or atrophy changes in the acetabulum [hip socket] although not marked," also that there has resulted the tilting of the pelvis and compensatory curvature of the spine already mentioned. These are injuries to parts of the body which are no part of the leg. Dr. Fox says they are not the usual result of a fracture of the neck of the femur where union of the parts is accomplished.

It appears also by some of the evidence that there has been injury to the muscles connecting the part of the femur known as "greater trochanter" with the ilium.

It is true there is conflict in the evidence as to union or lack of union and also on the question of injury to parts of the body above the leg. This conflict was for the commissioner to resolve. The evidence in support of his findings is not overwhelming but it is more than a mere scintilla. We are bound by his decision on these fact questions. Code section 1453; Enfield v. Certain-teed Products Co., 211 Iowa 1004, 233 N. W. 141; Wichers v. McKee Button Co., 223 Iowa 853, 273 N. W. 892.

As the injury suffered by appellee extended beyond the scheduled area, the schedule, of course, does not apply. We

must therefore seek some other basis for computing compensation. Before leaving this part of the case, however, it is proper to refer to the briefs on both sides, which discuss cases from other jurisdictions.

Appellants' contention may be best indicated by this quotation from their brief:

"Even though the injury be to a scheduled member we readily concede that if as a result of such injury some other part of the body is affected so as to create a disability separate and distinct from the usual, ordinary and natural results of the injury to the scheduled member, compensation may be awarded in addition to that provided in the schedule. *Conversely we contend that even should the situs of the injury be without the schedule, the workman nevertheless is limited by the provisions of the schedule when the disability and incapacity flowing from the injury are manifested in and confined to the scheduled member.*" (Italics are ours.)

Support for their argument is found in some of the cases they cite from other jurisdictions, but we find ourselves unable to agree with the doctrine of these decisions. The term "total disability," in the sense of loss of earning power, cannot be said to be "manifested in and confined to" any particular scheduled member. It is an inability of the individual, as such, to earn —not a mere inability of a certain member to function. It may arise solely from some injury to or loss of a scheduled member; or it may result from some injury of wider extent. Cases from other states are of little aid to us here. We are disposed, rather, to rest our decision upon an analysis of the language of our own statutes. Code section 1395 provides:

"For an injury causing permanent total disability, the employer shall pay the weekly compensation during the period of his disability, not, however, beyond four hundred weeks."

This section of the statute sets no limitation which concerns the physical location of the injury causing the disability. The only limitation of that sort is found in cases where "permanent total disability" comes from some injury limited by

and included in the schedules contained in Code section 1396. Permanent total disability, as we have said, may be caused by some scheduled injury, even though no other part of the body except the scheduled member be affected. This may happen because of lack of training, age, or other condition peculiar to the individual. Such injury, though causing permanent total disability, is *arbitrarily* compensable according to the schedule. But where there is injury to some scheduled member, and also to parts of the body not included in the schedule, the resultant ''permanent total disability,'' if established, is compensable under Code section 1395.

This seems a logical interpretation of the statute itself. Appellee fortifies it by reference to Clark v. Clearfield Opera House Co., 275 Pa. 244, 119 A. 136, which seems exactly in point as to the location and extent of the injury involved.

It is our conclusion appellee's injury is not within the schedules of Code section 1396 because the actual physical injury extended beyond and outside the scheduled area.

III. There remains the commissioner's finding of permanent total disability. We have consistently held that the test here is *industrial* disability—reduction of earning capacity, and not mere *functional* disability. Oldham v. Scofield & Welch, 222 Iowa 764, 768, 266 N. W. 480, 269 N. W. 925; Diederich v. Tri-City R. Co., 219 Iowa 587, 258 N. W. 899; Moses v. National Union Coal Mining Co., supra. But functional disability may be taken into consideration. Oldham v. Scofield & Welch, supra.

One expert fixed appellee's degree of functional disability at seventy-five to eighty per cent; another at eighty to one hundred per cent. This accident happened June 9, 1936. At the time of the hearing, nearly six years later, he was still unable to walk without the aid of crutch or cane—''two canes part of the time and a crutch and a cane part of the time.'' He had performed no physical labor since his injury. His education and training were limited so that his only opportunity for earning was in employments that required physical labor. He was sixty-five years old. We think the commissioner's finding of permanent total disability was supported by sufficient competent evidence. The language from our decision in the Diederich

case, supra [at page 594 of 219 Iowa, page 902 of 258 N. W.], is pertinent here:

"His disability may be only a twenty-five or thirty per cent disability compared with the one hundred per cent perfect man, but, from the standpoint of his ability to go back to work to earn a living for himself and his family, his disability is a total disability * * *."

It is our conclusion that the trial court properly sustained and confirmed the findings and award of the commissioner. The decision is affirmed.—Affirmed.

MULRONEY, C. J., and GARFIELD, OLIVER, HALE, BLISS, WENNERSTRUM, and MANTZ, JJ., concur.