LOUIS KELLOGG, claimant-appellee, v. SHUTE AND LEWIS COAL COMPANY, employer, and EQUITABLE NATIONAL INSURANCE COMPANY, insurance carrier, defendants-appellants.

No. 51435.

(Reported in 130 N.W.2d 667)

OCTOBER 20, 1964.

Austin, Grefe & Sidney, of Des Moines, for appellants.

Hugh W. Lundy, of Albia, and H. S. Life, of Oskaloosa, for appellee.

MOORE, J.—On June 17, 1955, plaintiff while driving mule in connection with his employer's mining operation broke his leg when it was caught between a mine prop and a loaded coal car. Soon thereafter defendant-insurance carrier entered into a Memorandum of Agreement with him, providing for payment of maximum weekly benefits of $28 per week for a "leg injury." Pursuant thereto defendants paid him $3584 and in addition thereto paid medical expenses of $3455.37.

July 18, 1959, pursuant to section 86.34, Code of 1954, plaintiff-claimant filed his application for review-reopening which states:

"Injury occurred at the Shute and Lewis Coal mine, June 17, 1955, while employee was driving mule and was squeezed between prop and coal car, injuring the right leg of employee.

"There was a nonunion of fracture of right femur, which required three operations. Employee is now in postoperative stage. The nail has been recommended to be removed by the Carrier's physician. There is a 2½ inch shortening of the right leg. That employee's right knee pulls and is stiff and he is unable to rotate it normally; that his right heel is held stiffly and there is a dip on the right side. The range of motion on his right hip has been reduced and that he is permanently disabled."

Following a hearing the deputy industrial commissioner made an award for additional compensation based on permanent disability of claimant's body as a whole from which defendant-employer and its insurance carrier appealed to the district court. From its judgment affirming the award defendants have appealed.

The question presented here is whether the deputy commissioner and the district court erred in awarding disability on the basis of the body as a whole rather than on a percentage of disability of the injured right leg only.

Section 86.30 (all references are to Code 1954) provides:

"Decision on appeal. Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * *

"3. If the facts found by the commissioner do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

Defendants assail the deputy commissioner's order on both grounds but the main thrust of their argument is that there is not sufficient competent evidence in the record to warrant the deputy commissioner's award based on disability of the body as a whole.

Chapter 85 prescribes three categories of disability and the compensation payable under each.

Section 85.33, Temporary disability—healing period—in part, provides: "In the event the employee has suffered an injury causing permanent partial disability for which compensation is payable under the provisions of section 85.35, the employer shall pay * * *."

Section 85.34 states: "Permanent total disability. For an injury causing permanent total disability, the employer shall pay * * *, not, however, beyond five hundred weeks."

Section 85.35 provides: "Permanent partial disabilities. Compensation for permanent partial disability shall begin at the termination of the healing period provided in section 85.33 and shall be based upon the extent of such disability, and for all cases * * * included in the following schedule compensation shall be paid as follows: * * *

"15. The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the compensation therefor shall be weekly compensation during two hundred weeks. * * *

"20. In all other cases of permanent partial disability, the

compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule."

It is not claimed full payment of medical expenses and all compensation for claimant's disability have not been made on the basis of leg injury alone under section 85.35(15). The deputy commissioner's award was made for 75 percent permanent total disability (section 85.34).

We have repeatedly and consistently construed section 86.30 as making the commissioner's findings of fact conclusive on appeal where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. That is, if the evidence presents a question which should be submitted to a jury, if trial were to a jury, then the court is bound by the commissioner's findings. It is the commissioner, not the court, who weighs the evidence. Hansen v. State of Iowa, 249 Iowa 1147, 1158, 91 N.W.2d 555, 561; Eagen v. K & A Truck Lines, Inc., 254 Iowa 914, 916, 119 N.W.2d 805, 806, and citations; Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 993, 119 N.W.2d 751, 752, and citations.

The law is also well settled that determination of questions of law by the commissioner, while entitled to careful consideration, is not conclusive and is subject to review upon appeal. Barton v. Nevada Poultry Co., 253 Iowa 285, 288, 110 N.W.2d 660, 662.

Claimant here relies almost entirely on our holding in the Barton case where the parties agreed that as a result of a blow to the right foot, a circulatory ailment developed from which claimant suffered a constant burning pain, affecting her entire nervous system.

We have no such agreement or admission here. Defendants admit injury and resulting disability to plaintiff's right leg but argue there is not sufficient competent evidence in the record of other disability resulting from his injury.

Of course plaintiff has the burden of showing by a preponderance of the evidence before the deputy commissioner his injury and the disability resulting therefrom. Rose v. John

Deere Ottumwa Works, 247 Iowa 900, 908, 76 N.W.2d 756, 760, and citations; Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 993, 994, 119 N.W.2d 751, 753, and citations.

Here plaintiff has the burden of showing that while the trauma, the injury, was limited to his right leg, there resulted an ailment extending beyond the scheduled loss of his leg or the use thereof. If he has met that burden of proof he is entitled to compensation on the basis of section 85.34. If he has failed to so prove, then the schedule for loss of a leg under section 85.35, subsections 15 and 20, limits his compensation payments. Soukup v. Shores Co., 222 Iowa 272, 268 N.W. 598; Dailey v. Pooley Lumber Co., 233 Iowa 758, 10 N.W.2d 569; Barton v. Nevada Poultry Co., 253 Iowa 285, 110 N.W.2d 660.

Thus the primary issue is one of fact to be determined from the record. On the day of his injury plaintiff was first seen by Dr. Dan Orlup and later by Dr. Frank N. Bay at Albia. Doctor Orlup diagnosed plaintiff's injury as a "compound comminuted fracture right femur". Doctor Bay diagnosed it as a "compound comminuted fracture middle third on right femur". Three days later Dr. Stephan Fox of Ottumwa performed an open reduction and inserted an intramedullary nail and diagnosed plaintiff's injury as a "compound fracture of the right femur, comminuted".

At defendants' request plaintiff was examined (including X rays) by Dr. F. Eberle Thornton, an orthopedic surgeon of Des Moines. His report shows his diagnosis as "healing fracture, upper third of the right femur, in good position with intramedullary nail in place. The patient has residual stiffness of the right knee."

Dr. S. F. Singer, radiologist of Ottumwa, made X-ray examinations of plaintiff on October 21 and December 21, 1955, and reported the right femur showed a fracture at about the junction between its upper and middle third. His first report states: "The fragments are held by an intramedullary pin which extends upward through the trochanteric area and its upper end is seen about one and one-half inches superimposed over the iliac bone. The lower end of the pin is seen about two

and one-half to three inches above the condyle of the right femur."

Doctor Fox removed the intramedullary pin on March 1, 1956, and a nonunion of the femur was discovered. Doctor Thornton on March 21 performed an open reduction and did a bone graft and plating of the right femur. Doctor Thornton continued caring for plaintiff and made periodical medical reports of the condition of the right femur.

April 19, 1957, plaintiff complained of a bowing in the right femur. Doctor Thornton's report of his examination on that day states: "X rays taken today revealed the following: Right Femur: There is now a definite nonunion, with increased angulation at the fracture site. One screw is broken in the lower end of the plate. The screws that are holding the graft are all right.

"The patient shows a frank nonunion, with 2″ shortening. I have advised an open reduction and bone graft."

Thereafter, Doctor Thornton again did an open reduction with a combination of pinning and bone grafting. He continued caring for plaintiff. Doctor Thornton's medical report of May 6, 1958, contains the following:

"X rays taken today of the right femur show excellent alignment and final healing of the grafted area of the right femur.

"DIAGNOSIS AND CONCLUSION

"Healed fracture of the right femur following bone graft and intramedullary nailing.

"The patient is now one year post-operative. His nail should be removed at any time now. I feel he is doing quite well. He has shortening which 1½″ build up on the shoe will provide almost complete equalization of the leg lengths.

"I feel one month after removal of the nail, he can return to work. He will end up with about a 25-30% disability of the right leg."

Plaintiff submitted himself for examination on three occasions to Dr. Webster B. Gelman, an orthopedic surgeon at Iowa City—on April 5, 1957, April 2, 1959, and March 16, 1962.

As to the first Doctor Gelman stated "my findings were that the patient had an involvement of the right leg." He found the

screws had pulled out from the bone and advised additional surgery. His findings include considerable loss of hip motion.

His second examination disclosed approximately two and a half inches shortening, a limitation of 60 percent of the normal range of motion of the knee and approximately 25 percent loss of the range of hip motion. He estimated the disability at 52 percent of the entire lower extremity. He recommended removal of the pin which was used by Doctor Thornton on the last operation.

Doctor Gelman on his third examination again found a shortening of two and a half inches, considerable limitation of knee motion and a 25 percent loss of hip motion. He again recommended removal of the pin and an elevation of the heel and sole of the right shoe to compensate for some of the loss of length. He estimated permanent partial disability of the lower extremity at 41.25 percent.

Doctor Gelman's reference to limitation of hip motion creates some question as to whether he found some disability other than to plaintiff's right leg. However, the question is eliminated when at the end of his testimony he states: "My examination did not encompass anything other than the right leg from the hip area down to the toe. The disabilities which I have mentioned are in the area I have just described."

Dr. Geoffrey W. Bennett of Oskaloosa testified he made a general examination of plaintiff on July 5, 1962, and although his history indicated primary injury had been to his right femur, plaintiff's complaints at the time included the lower back as well as both lower extremities and abdomen.

Doctor Bennett's testimony includes: "This man had some permanent partial disability, he has considerable amount of partial disability to his whole body. It's due in part to the shortening of his right lower extremity, in part to the painful bursa of his right buttocks, in part to the condition of his lumbar spine. I think it is due in part to his mental state. That it's not a problem to decide whether it's a part of his injury, but those disabilities are apparent to my examination. I feel that the condition of his left knee contributes to this permanent partial disability of his entire body."

Plaintiff in part states: "Because of this leg, I can't get down to do the work. I can't do any of the kind of work that I used to do before and I have tried, but I can't do it. I can't carry any weight at all, none to amount to anything. I tried to carry some potatoes in the house and I fall over. The injury to my leg affects the use of my whole body. It is just like trying to stand on one leg and you ain't got but one part under you. You have not enough to hold yourself. I have it hurting me all the time. It feels like I have a tight band around here by the legs, the right leg above the knee and including the hip, and it bothers me, just like sticking a knife in at times. I don't have the use of my leg to get down at my shoe, I can't bend any further. I can't bend my leg back this way. I can't lace my shoe. I can't bend my hip. I can bend over about 3 inches from the ground. When I do, it pulls on the hip. * * * I caught my leg between a car and a prop. I broke my right leg about two or three inches below the socket bone. That was my principal injury and then I had these ribs. I have some bruises and abrasions, but outside of that, the leg was my principal injury. It is my leg that has been giving me trouble ever since and I have had some stomach trouble. * * * My inability to do coal mining or work in the mine at the present time is my inability to use my leg, to bend over, my leg won't let my body function with it. I can't use my right leg like I use my left leg. As a result of this, I cannot return to coal mining. * * * It is not my leg alone, but it has something to do with your hips and body which just don't function to get around. I can't name it, but you just don't have the functions, the use of the rest of yourself. It is my hip and leg, or whatever this is constructed from."

The sole reason for allowance of additional compensation is stated by the deputy commissioner in his decision as follows:

"The shortening of the leg causes a tilting of the pelvis, with the result that the evaluation of disability should be on the body as a whole rather than on the leg only even though the trauma was confined primarily to the right leg. See Barton v. Nevada Poultry, 110 N.W.2d 660."

We have carefully searched the record, including all medical

reports, and agree with defendants' unanswered argument that "pelvis" or "tilting of the pelvis" are not mentioned or used in anyway. The word "pelvis" nowhere appears in the entire record of this case and there is no evidence that even if the same did exist, it was not the natural consequence of the injury to the leg, nor is there any testimony that this, in anyway, contributes to or causes any disability.

In Dailey v. Pooley Lumber Co., 233 Iowa 758, 10 N.W.2d 569, we point out the statutory reference to leg (section 85.35-[15]) includes the hip joint. However, the proof established a permanent tilting of the pelvis and the trial court's approval of the commissioner's allowance for that disability was affirmed by us. We have no such proof here.

There is not sufficient competent evidence in the record to warrant the making of such a finding or decision by the deputy commissioner.

The trial court did not approve the deputy commissioner's finding but affirmed allowance of additional compensation on the testimony of Doctor Bennett. Such a finding was not made by the deputy commissioner.

We do not agree with the trial court. Doctor Bennett examined plaintiff several years after his injury for the purpose of evaluation. He found partial disability of plaintiff's whole body due in part to the condition of his *left* knee, lumbar spine and his mental state. He made no attempt to show any causal connection between the conditions found and plaintiff's injury on June 17, 1955. This is made clear by his statement on direct examination: "That is not a problem to decide whether it's a part of his injury, but those disabilities are apparent to my examination."

It is well settled the findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt they will be construed to uphold, rather than defeat, the judgment. Findings of the commission should be construed even more liberally than those of the court. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 907, 76 N.W.2d 756, 760; Nicks v. Davenport Produce Co., 254 Iowa 130, 134, 115 N.W.2d 812, 815.

However, this rule does not remove plaintiff's burden to show by a preponderance of the evidence his injury and the nature and extent of his disability.

In Soukup v. Shores Co., 222 Iowa 272, 268 N.W. 598, where disability was to the employee's leg only and he was from an industrial sense permanently disabled, we reverse the trial court's allowance in excess of the statutory schedule. At page 278, 222 Iowa, page 601, 268 N.W., we state:

"The right of a workman to receive compensation for injuries sustained by him growing out of and in the course of his employment is purely statutory. The statute conferring such right upon the workman can also fix the amount of compensation to be paid for different specific injuries, and the employee is not entitled to compensation except as provided by the statute. That a workman sustaining one of the minor injuries for which specific compensation is provided under the statute might, because of such injury, be unable to resume his employment and, because of his lack of education or experience or physical strength or ability, might be unable to obtain other employment, does not entitle him to be classed as totally and permanently disabled. It may be conceded that the legislature, if it saw fit to do so, might make such a provision. As the law stands, however, no such provision has been made by the legislature, and it is not the province of the court to enact such a provision by what is sometimes referred to as judicial legislation."

Under the record plaintiff's compensation is limited to the statutory schedule set by section 85.35(15).—Reversed.

All JUSTICES concur except HAYS, J., not sitting.