Richard D. **GRAVES**, Appellant,

v.

**EAGLE IRON WORKS**, Employer, Employers Mutual Casualty Company, Insurance Carrier, and the Iowa Workers' Compensation Service and/or Iowa Industrial Commissioner, Appellees.

No. 67888.

Supreme Court of Iowa.

March 16, 1983.

As Corrected March 25, 1983.

Rehearing Denied April 18, 1983.

Arthur C. Hedberg, Jr., and Phillip Vonderhaar of Hedberg, Brick, Tan, Pratt & Ward, Des Moines, for appellant.

Frank T. Harrison of Hopkins & Huebner, Des Moines, for appellees.

Considered by LeGRAND, P.J.*, and HARRIS, McCORMICK, McGIVERIN, and CARTER, JJ.

HARRIS, Justice.

This appeal, in a workers' compensation case, challenges a determination that the compensation for an injured worker's scheduled injuries is limited by statute to specific physical impairments. The injured worker argues for a broader right of compensation which would extend to his decreased ability

* Senior Judge.

to perform his work. The industrial commissioner rejected the contention, determining that "loss of earning capacity is not a consideration." On judicial review the district court affirmed the decision of the industrial commissioner. We affirm the district court.

The petitioner is a 53 year-old married man with four children. He has no physical disability other than that arising from the involved injury. In October of 1977 he suffered a work-related injury while employed by defendant and was paid both permanent partial disability benefits and healing period benefits.[1]

Petitioner seems to have been an excellent employee. After his injury he twice attempted to return to work but his leg bothered him too much to perform his duties. The doctor eventually rated his permanent physical impairment at 20 percent. The employer has a "full release" policy which requires injured employees to secure a statement from their doctor that the employee can perform without any physical restrictions before the company takes him back. Because of his 20 percent permanent impairment petitioner lost his job, a job he had held for some 25 years. The employer has no other work for him.

Petitioner argues that the 20 percent *impairment* of his left leg has produced a *disability* exceeding 20 percent. He contends that his disability, and benefits, should be measured by factors in addition to his percentage of impairment. He argues for "industrial disability" factors such as loss of earning capacity. The commissioner and the district court both refused to consider the industrial disability factors in determining the extent of petitioner's permanent partial disability. His benefits were limited to those under the statutory schedule.

I. The question is one of law. *Second Injury Fund v. Mich Coal Co.,* 274 N.W.2d 300, 302 (Iowa 1979). In *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983), we stated the general principles that guide our interpretation of the workers' compensation act:

Our ultimate goal is to determine and effectuate the intent of the legislature. [Authorities.] We look to the object to be accomplished, the mischief to be remedied, or the purpose to be served, and place on the statute a reasonable or liberal construction which will best effect, rather than defeat, the legislature's purpose. [Authorities.] We avoid strained, impractical or absurd results in favor of a sensible, logical construction. [Authorities.] We consider all parts of the statute together, without attributing undue importance to any single or isolated portion. [Authority.] The spirit of the statute must be considered along with its words [Authority] and the manifest intent of the legislature will prevail over the literal import of the words used. [Authority.] Although final interpretation and construction of the statute is for this court, we give deference to an interpretation by the responsible administrative agency. [Authorities.] Our policy is to liberally construe workers' compensation statutes in favor of the worker. [Authorities.]

In seeking compensation for "industrial disability" petitioner points to a common law principle we have applied in cases involving permanent nonscheduled injuries. In *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 192 (Iowa 1980), we explained:

Disability from injuries covered by chapter 85 has been defined by case law as "industrial disability," or a reduction in earning capacity. [Authority.] Among the criteria considered in determining in-

---

1. Iowa Code § 85.34 (1981) establishes a schedule of compensation benefits for workers who suffer permanent disabilities. In the case of two-thirds of a leg (§ 85.34(2)(*o*)) the compensation is fixed at the weekly compensation for 220 weeks. The section then provides that where a disability is "less than that specifically described in [the] schedule" the compensation

is to be fixed at the percentage proportion that the injury bears to the scheduled maximum compensation. Because petitioner was found to have suffered a 20 percent disability he was allowed 20 percent of 220 (or 44 weeks) worth of benefits. He also received healing period benefits under section 85.34(1).

dustrial disability are the claimant's "age, education, qualifications, experiences and his inability, because of the injury, to engage in employment for which he is fitted." [Authority.] Functional disability, while a consideration, has not been the final criterion. [Authority.] This was exemplified in *Diederich v. Tri-City Railway,* 219 Iowa 587, 594, 258 N.W. 899, 902 (1935), which concluded, "His [functional] disability may be only a twenty-five to thirty percent disability compared with the one hundred percent perfect man, but, from the standpoint of his ability to go back to work to earn a living for himself and his family, his disability is a total disability . . . ."

*See* Note, *Trends in Industrial Disability in Iowa,* 28 Drake L.Rev. 915, 915–17 (1978–79).

The medical testimony in this case went only to physical impairment and did not purport in any way to measure petitioner's industrial disability. Iowa Admin.Code 500–2.4 adopts the Guides to the Evaluation of Permanent Impairment of the American Medical Association for determining permanent partial disabilities under the statute. It seems that these guides urge physicians to note the difference between impairment and disability, a distinction petitioner urges in support of his position. The distinction was nevertheless not applied by the commissioner because of our cases which hold to the contrary. They do not allow an employee with a scheduled injury to present evidence of industrial disability; such evidence is admissible only when the employee suffered a total or nonscheduled disability. *See, e.g., Kellogg v. Shute and Lewis Coal Co.,* 256 Iowa 1257, 1267, 130 N.W.2d 667, 672 (1964) (reversing commissioner's grant of compensation based on permanent total disability of body as a whole; injury was confined to claimant's leg, and liability for such injuries is limited by the schedule); *Barton v. Nevada Poultry Co.,* 253 Iowa 285, 292, 110 N.W.2d 660, 663 (1961) ("Disability may be total but compensable only under the specific schedule;" schedule does not apply if ailment extends beyond the scheduled loss, as the commissioner found

here); *Dailey v. Pooley Lumber Co.,* 233 Iowa 758, 760, 10 N.W.2d 569, 571 (1943) (if claimant's injuries fall within the schedule, "we are not concerned with the question of the extent of disability. The compensation in that event is definitely fixed according to the loss of use of the particular member. The very purpose of the schedule is to make certain the amount of compensation in the case of specific injuries and to avoid controversies"); *Schell v. Central Engineering Co.,* 232 Iowa 421, 425, 4 N.W.2d 399, 401 (1942) ("The statute was intended to be definite. It draws definite lines. A line is necessarily arbitrary"); *Soukup v. Shores Co.,* 222 Iowa 272, 277, 268 N.W. 598, 601 (1936) ("the legislature has definitely fixed the amount of compensation that shall be paid for specific injuries . . . and that, regardless of the education or qualifications or nature of the particular individual, or of his inability . . . to engage in employment . . . the compensation payable . . . is limited to the amount therein fixed"). *Accord, Blizek v. Eagle Signal Co.,* 164 N.W.2d 84, 85–86 (Iowa 1969); *Spurgeon v. Iowa & Missouri Granite Works,* 196 Iowa 1268, 1271–72, 194 N.W. 286, 287 (1923).

In *Soukup,* 222 Iowa at 279, 268 N.W. at 601, we rejected the expansion sought by this petitioner with the following language:

The right of a workman to receive compensation for injuries sustained by him growing out of and in the course of his employment is purely statutory. The statute conferring such right upon the workman can also fix the amount of compensation to be paid for different specific injuries, and the employee is not entitled to compensation except as provided by the statute. That a workman sustaining one of the minor injuries for which specific compensation is provided under the statute might, because of such injury, be unable to resume his employment and, because of his lack of education or experience or physical strength or ability, might be unable to obtain other employment, does not entitle him to be classed as totally and permanently disabled. It may be conceded that the legislature, if it saw fit

to do so, might make such a provision. As the law stands, however, no such provision has been made by the legislature, and it is not the province of the court to enact such a provision by what is sometimes referred to as judicial legislation.

Petitioner believes our holdings are out of step with recent developments in workers' compensation law. One commentator has said:

Although in many jurisdictions the schedule award is the exclusive remedy whenever applicable, some courts are beginning to treat the loss of specific members as amounting to percentage disabilities of larger members, or of the entire body, when this more fairly reflects the actual effect of the injury .... In any event, the schedule is not exclusive if the effects of the injury extend to other parts of the body.

2A A. Larson, *The Law of Workmens' Compensation,* § 58.00 at 10–164 (1979)

If we were to overturn our cases, cited above, in favor of the trend described by Professor Larson it would be inappropriate to do so here. There is no evidence that petitioner's impairment in any way exceeded the scheduled injury for which he was compensated. No other part of his body was in any way affected. Larson goes on to explain: "When, however, there has been a clean-cut loss of a scheduled member, with no complications, many jurisdictions hold that the schedule allowance for that member is exclusive." *Id.* at § 58.22.

In rejecting a somewhat analogous claim under the Longshoremen's and Harbor Workers' Compensation Act the United States Supreme Court pointed out "[w]e are concerned here solely with a case in which a scheduled injury, limited in effect to the injured part of the body, results in a permanent partial disability." *Potamic Electric Power Co. v. Director, OWCP,* 449 U.S. 268, 279, n. 20, 101 S.Ct. 509, 515, n. 20, 66 L.Ed.2d 446, 455 n. 20 (1980).

On these facts we think any abandonment of our long established rule should come by statutory amendment.

II. In the alternative petitioner claims he has in fact "suffered an injury which results in a disability of his body as a whole ...." Because of his injury his doctor placed written restriction on his activity: "It is my belief that this man cannot do work that involves walking on uneven ground, climbing ladders, squatting or doing heavy weight lifting." These limitations were thought by the doctor to be permanent. Petitioner argues these limitations relate to his body as a whole. He therefore thinks his disability should be evaluated on an industrial basis.

The claim is contrary to the evidence. The same doctor testified:

Q. Would it be a fair statement, Doctor, that you did not find any permanent physical impairment which you feel results from this injury other than the impairment to the right leg you have described? A. To the left leg.

Q. Or the left leg, I am sorry. Is that correct? A. Yes.

The doctor was the sole medical expert to testify and furnished substantial evidence that the petitioner's disability does not extend to his body as a whole. Petitioner's contention to the contrary is without merit.

AFFIRMED.

All Justices concur, except McCORMICK, J., who concurs specially.

McCORMICK, Justice, concurring specially.

I reluctantly concur in the result in this case.

The controlling statute is section 85.-35(2)u, which provides in relevant part:

If it is determined that an injury has produced a disability less than that specifically described in said schedule, compensation shall be paid during the lesser number of weeks of disability determined, as will not exceed a total amount equal to the same percentage proportion of said scheduled maximum compensation.

Workers' compensation is supposed to pay workers for industrial disability caused by

covered injuries. The cases define industrial disability as reduction in earning capacity. *See McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 192 (Iowa 1980). In the present case, the worker's earning capacity has been drastically and permanently reduced. His problem, however, is that he has a "scheduled" injury. The schedule conclusively presumes that the effects of functional loss of a scheduled member and industrial disability are the same. *See* 2 A. Larson, The Law of Workers' Compensation § 58.11 at 10–174 (1981).

As in the present case when the functional loss from injury to a scheduled member "is not a total functional loss, the weekly payments are made for the number of weeks that the percentage of functional loss bears to the total functional loss of such a member." Hedberg & Vonderhaar, *An Overview of the Iowa Workers' Compensation Act,* 30 Drake L.Rev. 809, 827 (1980–81). As this case illustrates, no necessary correlation exists in fact between functional loss and industrial disability. Loss of a foot will mean one thing to a person with a desk job and quite another to a person who is trained only in work requiring standing, walking and lifting. But for the fortuity that his injury was to a scheduled member, Graves would have recovered for his actual industrial disability rather than the wholly arbitrary presumed industrial disability under the schedule.

The schedule brings a windfall to the worker in some cases and gross hardship to the worker in others. Although it is argued the schedule has the advantage of simplicity, it is questionable whether that advantage is worth the cost. The result in the present case is indefensible except that it is demanded by an anachronistic statute.