FRED SCHELL, Appellee, v. CENTRAL ENGINEERING COMPANY et al., Appellants.

No. 46004.

JUNE 16, 1942.

REHEARING DENIED OCTOBER 2, 1942.

C. A. Williams, Jr., of Oskaloosa, and L. R. Bowker, of Rock Island, Ill., for appellants.

Hanley & Hanley and Drake & Kautz, all of Muscatine, for appellee.

STIGER, J.—Claimant sustained an injury to his right foot on April 19, 1937, arising out of and in the course of his employment by defendant Central Engineering Company. A memorandum of agreement was entered into awarding claimant weekly compensation for 125 weeks for the loss of his foot, under the provisions of Code section 1396, subsection 14. This agreement was signed and approved by the industrial commissioner on May

24, 1937. The amount due under this agreement was paid to claimant.

On June 28, 1940, claimant filed an application for review, stating that since the injury was sustained and the amount due under the agreement was paid it was necessary to have a second amputation between the knee and the foot, at a place seven and one-half inches below the knee, which resulted in a greater loss than his foot for which compensation was first awarded, and that he is entitled to payment for a greater number of weeks than theretofore awarded to him. The deputy industrial commissioner found the injury received by claimant caused more than the loss of a foot and less than the loss of a leg, and awarded him 25 weeks' additional compensation under the provisions of section 1396, subsection 20. This ruling was sustained by the trial court.

The first amputation removed the anterior part of the foot, including all the bones beyond the ankle joint except the two bones of the foot and heel immediately below the joint. This operation is known to the medical profession as Chopart's amputation, the remaining portion of the foot being known as Chopart's stump.

The material portion of section 1396 reads:

"1396 Permanent partial disabilities. Compensation for permanent partial disability shall begin at the date of injury and shall be based upon the extent of such disability, and for all cases of permanent partial disability included in the following schedule compensation shall be paid as follows: * * *

"14. For the loss of a foot, weekly compensation during one hundred twenty-five weeks.

"15. The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the compensation therefor shall be weekly compensation during two hundred weeks. * * *

"20. In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule."

The question is whether claimant lost a foot or whether he lost a foot and part of his leg, as a direct result of the injury.

The physician and surgeon who performed both operations testified there was no infection in the foot and the limb had entirely healed at the time of the second amputation. The deputy commissioner so found.

We quote from the reopening decision of the deputy commissioner:

"The attending and operating physician testified that the second operation was made necessary because of the fact that the first operation at the point of election through the line of Chopart's joints proved unsatisfactory in that the stump due to the injury and infection including tenderness and pain following the first operation was not usable. The site of the second amputation was selected in order to secure the best use of a prosthesis or artificial appliance. The only issue in the case involves the determination of the question as to whether or not due to the injury in question claimant has suffered a compensable loss in excess of the loss or loss of use of his right foot within the meaning of the Workmen's Compensation Law. * * *

"We are of the opinion that due to the facts, as testified to by the attending physician, the stump was not usable and that good surgical practice required the amputation at the point finally selected, seven inches below the knee, that as a matter of law that whatever the ultimate loss may be, it was attributable to the injury. *. * * the entire loss was one flowing from and caused by the injury.

"Claimant, as a fact, has suffered an actual loss of the foot and part of the leg by amputation, which we believe was due to the injury in question. He has not suffered the whole loss of the leg for the reason that an amputation or loss of two-thirds of that part of a leg between the hip joint and the knee joint is required to equal the loss of a leg. The amputation was at a point about seven inches below the knee joint or through the upper part of the middle third of the lower leg. The loss, therefore, is more than the loss of a foot and less than the loss of a leg."

We cannot agree with the conclusion reached by the commissioner and the district court. The only operation necessary for a complete recovery from the injury to the foot was the first

amputation, at which time there was no infection, and the stump entirely healed.

At the time of the second operation, claimant had lost a foot. This was the extent of his disability under section 1396. At that time no part of his leg had been injured. Manifestly, the second amputation was not necessary to the proper treatment of the injury to the foot. The injury to the foot did not require both operations. The surgeon testified:

"The limb was entirely healed at the time of this amputation. There was no running sore any place on the Chopart's stump or any place above it. The leg was amputated at the point in question in order to give him the best stump. The best stump is the most serviceable stump. You have the use of the limb and you are more likely to have a good pad on the stump. As I recall, he had used some attachment or artificial foot, but had said that he just couldn't use it. By a serviceable stump I mean one that he could get around on and use as a head for an artificial attachment. He wasn't able to get around. He came in complaining many times that he just couldn't use the apparatus that he had and he wasn't able to get around on it. That is why I took it off higher up.

"I think that Mr. Schell has a very good stump now and gets around very well and is able to get along. Operations have changed in the last quarter of a century. The point of election used to be a little bit higher up than where I amputated this leg. The more recent opinion is to amputate the leg at about the level it is here in order to give the best result. We talked to him many times before I performed the second operation as to why we wanted to cut off the foot. I told him that he would have a better stump.

"No, I don't consider that I made any mistake [first operation]. Before I went in this case, I had three other doctors see him. I scarcely ever go into anybody's case without other operators seeing it with me and talking it over and that was gone over before the first and last operations."

Appellee's leg was not injured by the accident. The only member injured or lost was his foot. The schedule or standard fixed by the legislature for the loss of this member provides for

weekly compensation for 125 weeks, which includes compensation for resulting reduced capacity to labor, and earning power. The second amputation was essentially a foot operation. One of the objects of the Workmen's Compensation Act was to avoid controversies in the adjustment of compensation for specific injuries by use of fixed schedules.

"The very purpose of the Workmen's Compensation Act is to fix definite rules for the measuring of compensation for specific injuries." Brugioni v. Saylor Coal Co., 198 Iowa 135, 138, 197 N. W. 470, 471.

"The statute was intended to be definite. It draws definite lines. A line is necessarily arbitrary. These lines are drawn for the specific guidance of the industrial commissioner. Its classifications do not purport to be subject to the discretion of the commissioner." Starcevich v. Central Iowa Fuel Co., 208 Iowa 790, 793, 226 N. W. 138, 140.

In Soukup v. Shores Co., 222 Iowa 272, 278, 268 N. W. 598, 601, the court said:

"The right of a workman to receive compensation for injuries sustained by him growing out of and in the course of his employment is purely statutory. The statute conferring such right upon the workman can also fix the amount of compensation to be paid for different specific injuries, and the employee is not entitled to compensation except as provided by the statute."

The sole purpose of the second operation was to give claimant the maximum use of an artificial foot. As stated by the deputy commissioner, "the site of the second amputation was selected in order to secure the best use of a prosthesis or artificial appliance." It increased his capacity to labor and his earning power. It reduced the economic handicap occasioned by the injury to his foot, for which specific injury he has received full statutory compensation.

In Marshall v. Octavia J. Coal Min. Co., 252 Ky. 460, 461, 463, 67 S. W. 2d 697, 698, the workmen's-compensation board ruled as a matter of law that "* * * where it is definitely shown that only the foot is injured, and amputation is made at

'the point of election' or five inches above the ankle so as to provide a cushion for the use of an artificial limb, and to increase the injured's future usefulness, such amputation amounts only to the removal of the foot as covered by the specific schedule in section 18 of the act.''

In affirming the ruling of the board, the court said:

''After a careful consideration of the question, we are constrained to agree with the Compensation Board that, where there is no injury to the leg, and only the foot is injured, amputation of the foot at a point five inches above the ankle, in order to get the best results for the injured employee, constitutes only the loss of a foot and is compensable as such, and not under the general provisions of the statute.''

In Vanaskie v. Stevens Coal Co., 133 Pa. Super. 457, 460, 2 A. 2d 531, 532, it is stated:

'' 'It is well settled that the statute fixes the amount to be paid for the loss of a foot without considering, but including, all incapacity, whether such incapacity were total, partial or no incapacity at all, and that additional compensation may be allowed only where some other part of the body is affected, and it must definitely and positively appear that it is so affected, as a direct result of the injury.' ''

As stated in Lente v. Luci, 275 Pa. 217, 222, 119 A. 132, 134, 24 A. L. R. 1462, where it is claimed some other part of the body is affected by the injury to a member ''there must be a destruction, derangement or deficiency in the organs of the other parts of the body. * * * Appellant's argument is based on a wrong theory,—that incapacity and not injury controls this section.'' See Black Diamond Collieries v. Carden, 150 Tenn. 336, 265 S. W. 541.

To sustain the judgment of the trial court, appellee relies on Brugioni v. Saylor Coal Co., 198 Iowa 135, 197 N. W. 470; Starcevich v. Central Iowa Fuel Co., 208 Iowa 790, 226 N. W. 138; Soukup v. Shores Co., 222 Iowa 272, 268 N. W. 598; Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 206 N. W. 146.

The issue involved in the case at bar was not considered in

the cited cases, which are not in conflict with the conclusion we have reached. It was error to award appellee 25 weeks' additional compensation.—Reversed.

BLISS, C. J., and HALE, MILLER, SAGER, and WENNERSTRUM, JJ., concur.

MITCHELL, GARFIELD, and OLIVER, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

The industrial commissioner and the district court found that the second operation was due to the original injury, and with this I agree. In fact, it seems to me appellants so concede in their brief and argument. I quote:

"Contrary to the statement made by the Deputy Industrial Commissioner in his Reopening Decision the appellants do not contend that the second operation was not due to the original injury. The appellants admit and the record so shows that the Chopart's stump was unsatisfactory; that good surgery dictated that the entire foot be amputated at a point of election calculated to give the claimant a serviceable foot; that whatever the ultimate loss may be it was attributable to the original injury."

The second operation was necessitated by the fact that a serviceable foot could not be given this claimant without it.

The issue in this case does not seem to be in dispute. Appellant states it:

"Was more than the claimant's right foot amputated at the time of the second amputation within the true meaning and intent of Section 1396 (14)?"

It is stated in the same way by the industrial commissioner, although he uses different words in so doing. Paragraph 14 of section 1396, 1939 Code, is the section of the Workmen's Compensation Act that provides for 125 weeks for the loss of a foot. Then follows paragraph 15 of section 1396, which states:

"The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the

compensation therefor shall be weekly compensation during two hundred weeks.''

Paragraph 20 of section 1396 of the 1939 Code is as follows:

''In all other cases of permanent partial disability, the compensation shall bear such relation to the periods of compensation stated in the above schedule as the disability bears to those produced by the injuries named in the schedule.''

Thus we find that paragraph 20 provides that in all cases of partial permanent disability not listed, the compensation allowed shall bear such relation to the period of compensation stated as the disability bears to those produced by the injuries specifically named. Claimant contends that he has lost more than a foot and less than the legal leg, and is entitled to additional compensation, the amount thereof to be determined by applying paragraph 20 to ascertain the per cent of the loss of the leg.

It seems to me that this court has already determined this question. In the case of Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 611, 206 N. W. 146, 148, this court said:

''By reference to Paragraphs 12 and 13 of the schedule, Section 2477-m9 (j), it is seen that the compensation for the loss of a hand is for 150 weeks, and for the loss of an arm two thirds of the way up on the upper bone, it is for 225 weeks. It therefore follows that in the case at bar the compensation must be for less than 225 weeks. The statute provides (Section 2477-m9 [j]) that, in such cases as are not specifically provided for in the schedule, such compensation shall be paid as the loss sustained bears to the enumerated losses; and therefore it became the duty of the commissioner to determine the compensation when more than the hand has been taken, but less than an arm. In other words, he is to determine how much should be added to the hand schedule, and how much deducted from the arm schedule, in arriving at the compensation to be allowed. The commissioner determined that 200 weeks, or 8/9ths of the time named in Paragraph 13, should be the basis.''

If we substitute foot for hand and leg for arm in the above quotation, the statement seems entirely applicable to the case at bar.

Claimant has suffered, due to the injury which he received, an actual loss of the foot and part of the leg. He has not suffered the whole loss of the leg for the reason that an amputation or loss of two thirds of that part of a leg between the hip joint and the knee joint is required to equal the loss of a leg. In this case the amputation was at a point about seven inches below the knee joint, or through the upper part of the middle third of the lower leg. The loss is more than the loss of a foot and less than the loss of a leg. The industrial commissioner reached the conclusion, and the district court affirmed him, that a fair allowance to the claimant would be an increase of 25 weeks over the compensation period formerly allowed, or one third of the aforesaid variance, which seems to me fair and reasonable, and I would affirm the lower court.

I am authorized to state that JUSTICES OLIVER and GARFIELD join in this dissent.