Roy HONEYWELL, II, Appellant,

v.

ALLEN DRILLING CO., and Bituminous
Casualty Corp., Appellees.

No. 92–1228.

Supreme Court of Iowa.

Oct. 20, 1993.

Rehearing Denied Nov. 23, 1993.

Donald Gonnerman, Waukee, for appellant.

John E. Swanson of Hansen, McClintock &
Riley, Des Moines, for appellees.

Considered by HARRIS, P.J., and
CARTER, LAVORATO, NEUMAN, and
ANDREASEN, JJ.

ANDREASEN, Justice.

The Iowa Industrial Commissioner award-
ed an injured employee workers' compensa-
tion benefits for a scheduled injury arising
from an accident that severed the employee's
right arm. Believing he was entitled to com-
pensation for an unscheduled injury, the em-
ployee filed a petition for review with the
district court. The district court affirmed
the commissioner's decision. We reverse
and remand.

## I. *Background Facts and Proceedings.*

Roy Honeywell, II, suffered a complete amputation of his upper right arm at the mid-forearm on February 5, 1983, while employed by Allen Drilling Company. Although the arm of the twenty-two-year-old employee was successfully reattached, the injury caused permanent partial disability to his right arm. The employer and its insurer, Bituminous Casualty Corp., agreed the injury to Honeywell arose out of and in the course of employment. The insurer paid medical expenses and disability payments during the healing periods in 1983, 1984, and 1985.

In May of 1986 Honeywell was hospitalized and treated for addiction to pain-killing drugs. He filed a petition with the industrial commissioner in 1988 requesting arbitration of his claim for additional benefits for medical expenses, rehabilitation benefits, additional healing period benefits, and for additional permanent disability benefits. He claimed 100% disability of his right arm and his body as a whole.

The arbitration decision was filed by the deputy industrial commissioner in February 1991. The deputy commissioner awarded 127 weeks of healing period benefits for the periods February 5, 1983 through April 16, 1985; August 15, 1985 through October 15, 1985; and May 13, 1986 through June 12, 1986. In addition, the deputy commissioner found Honeywell entitled to permanent partial disability benefits for 230 weeks based upon an impairment of ninety-one percent to the right upper extremity as provided by Iowa Code section 85.34(2)(m) (1991). The employee appealed and the insurer and employer cross-appealed.

On October 31, 1991, the commissioner filed his appeal decision. He affirmed the award of healing period benefits and permanent partial disability benefits. The commissioner modified the arbitration decision award of costs. On application of the insurer and employer, the commissioner recomputed the disability benefits to allow benefits for 227.5 weeks rather than the 230 weeks (ninety-one percent of 250 weeks). Honeywell then petitioned the district court for review of the commissioner's decision. The employ-ee urged the injury should have been treated as an injury to the body as a whole, the award of healing period benefits was inadequate, and that the commissioner undertaxed the costs. In its answer, the insurer and employer challenged only the commissioner's finding as to the extent of impairment of the scheduled member.

The district court affirmed the commissioner's decision. The court found Honeywell failed to prove that he suffered an industrial disability as a result of his work-related injury. Honeywell appeals from the district court decision. No appeal was taken by the insurer or employer.

## II. *Scope of Review.*

■ This is a judicial review of the industrial commissioner's decision under Iowa Code chapter 17A. *See* Iowa Code § 86.26. Our review, like that of the district court, is for the correction of errors at law, not de novo. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993). We may reverse the commissioner's finding of facts if they are unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole. Iowa Code § 17A.19(8)(f). "Evidence is substantial if a reasonable mind would accept it as adequate to reach the same findings." *Suluki v. Employment Appeal Bd.,* 503 N.W.2d 402, 404 (Iowa 1993).

## III. *Scheduled and Unscheduled Workers' Compensation Benefits.*

If an employee suffers a personal injury causing permanent partial disability, the employee is entitled to workers' compensation benefits based upon the employee's average weekly spendable earnings during the healing period and for an additional period of time as compensation for the permanent partial disability suffered by the employee. Iowa Code § 85.34. As we have stated:

> Permanent partial disabilities are classified as either scheduled or unscheduled. Scheduled injuries are set forth in section 85.34(2)(a)–(t) which fixes the number of weeks a worker must be compensated for loss of designated body parts. Unsche-

duled disabilities are those which are not listed in subparagraphs (a)–(t) and instead constitute a disability to the body as a whole. Iowa Code § 85.34(2)(u). The disability referred to in this section is known as "industrial disability, disability to the body as a whole, or simply an 'unscheduled injury.'"

*Second Injury Fund v. Braden,* 459 N.W.2d 467, 470 (Iowa 1990) (citations omitted).

█ Scheduled weekly benefits are allocated for injury to a specific body part ranging from 20 weeks for the loss of a little finger, to 250 weeks for the loss of an arm. Iowa Code § 85.34(2)(e), (m). In all cases of permanent partial disability from unscheduled injuries, compensation is paid during the number of weeks in relation to 500 weeks as the disability bears to the body of the injured employee as a whole. Iowa Code § 85.34(2)(u). If, as a result of a single accident, an employee receives both an injury to a scheduled member and an injury to parts of the body not included in the schedule, then compensation is based upon industrial disability, not the loss or impairment of the scheduled injury. *Mortimer,* 502 N.W.2d at 16–17. In determining industrial disability, functional impairment is just one factor. *Id.* at 14. "Other factors include the employee's age, education, qualifications, experience, and the inability of the employee to engage in employment for which the employee is fitted." *Id.* at 14–15.

### IV. *Psychological Condition Caused or Aggravated by Work–Related Injury.*

#### A. Compensability.

█ The deputy commissioner in his findings of fact found Honeywell's work experience at the time of his injury was as a roughneck for a drilling company. Following his injury Honeywell returned to college and completed a four-year college degree. While hospitalized for the injury, Honeywell was administered morphine, codeine and demerol for pain. He testified that he became addicted to morphine as a result of the medical treatment following the severance of his arm. The deputy commissioner found Honeywell's testimony credible. The record shows that Honeywell had a preexisting personality disorder and substance abuse disorder. The deputy commissioner found:

It is found that claimant's preexisting personality disorder and substance abuse disorder were materially aggravated by the accident of February 5, 1983. The aggravations are compensable.

Only one period of lost time can be linked to the aggravation. That being the inpatient treatment for opiate addiction starting on May 13, 1986 and ending June 12, 1986. Claimant's inpatient treatment was a direct result of his addiction to morphine.

. . . .

Claimant's entitlement to permanent partial disability is at issue. Claimant alleges an entitlement to industrial disability due to psychological impairment. The treating doctors failed to issue an impairment rating which apportioned the impairment allegedly caused by the aggravation of the preexisting substance abuse disorder and personality disorder. Therefore, claimant has failed to prove by a preponderance of the evidence that the aggravation of the preexisting disorders resulted in permanent partial disability. Claimant's demand for industrial disability also fails as a matter of law in that the claimant is compensated for any reduction in earning capacity through the schedule.

The record reflects that Dr. Reagan rated the impairment to Honeywell's right upper extremity at seventy-one percent, Dr. Clendenin at seventy-five percent, and Dr. Sauer rated the impairment at ninety-one percent. The deputy commissioner stated in his findings that he accepted Dr. Sauer's opinion because Dr. Sauer was the primary treating physician, his rating was related to the AMA guidelines and most accurately reflected the severity of the impairment, and he had followed claimant continuously over a longer period of time.

In his conclusions of law, the deputy commissioner stated:

Claimant has met his burden in proving that the February 5, 1983, amputation injury aggravated his preexisting substance abuse disorder and personality disorder.

. . . .

A claimant may not recover benefits for industrial disability if the injury is to a scheduled member and not to the body as a whole even when psychological problems affect earning capacity. A claimant is compensated for any reduction in earning capacity through the schedule. The scheduled loss system created by the legislature is presumed to include compensation for reduced capacity to labor and to earn. *Schell v. Central Engineering Co.*, 232 Iowa 421, 4 N.W.2d 399 (1942) (citations to commissioner decisions omitted).

Claimant has requested an award of industrial disability. Claimant's injury and impairment are limited to the right upper extremity. Psychological impairment and loss of earning capacity attributable to the aggravation have not been demonstrated. The undersigned is without jurisdiction to award industrial disability in a scheduled member case. As a matter of law, the claimant is not entitled to industrial disability.

The commissioner found the deputy commissioner's findings of fact adequate and that they accurately reflected the pertinent evidence. The commissioner adopted all of the conclusions of law stated in the arbitrator's decision relating to the claim for industrial disability benefits.

In *Schell*, the court did say "[t]he schedule or standard fixed by the legislature for the loss of this member [foot] provides for weekly compensation for 125 weeks, which includes compensation for resulting reduced capacity to labor, and earning power." *Schell*, 232 Iowa at 424–25, 4 N.W.2d at 401.

■ The commissioner's reliance on this language is misplaced. We have not cited the quoted language in subsequent opinions. Our subsequent cases make clear that compensation payable for a scheduled injury is not related to industrial disability; the amount paid for scheduled injuries is made regardless of the employee's ability or inability to engage in employment. *Graves v. Eagle Iron Works*, 331 N.W.2d 116, 118 (Iowa 1983). As stated in the special concurrence, "no necessary correlation exists in fact

between functional loss and industrial disability." *Id.* at 120.

The commissioner's decision suggests a psychological condition resulting from a scheduled injury is not compensable under Iowa workers' compensation law. We disagree. In *Mortimer*, decided after this case was appealed, we held that a psychological condition caused or aggravated by a scheduled injury is to be compensated together as an unscheduled injury. *Mortimer*, 502 N.W.2d at 17. "Whether the spill over effects are physical or mental, the result is same: disability." *Id.*

### B. Substantial Evidence.

■ The commissioner found "psychological impairment and loss of earning capacity attributable to the aggravation had not been demonstrated." In determining if there is substantial evidence to support the commissioner's finding, the question is not whether the evidence might support a different finding, but whether under this record there is substantial evidence to support the finding actually made by the commissioner. *See Freeland v. Employment Appeal Bd.*, 492 N.W.2d 193, 197 (Iowa 1992). If the evidence is in conflict or reasonable minds might disagree about the conclusions to be drawn from the evidence, we are bound to accept the commissioner's findings. *Id.*

After reviewing the entire record, we find no evidence to support the commissioner's findings and conclusion. When the relevant evidence is uncontroverted and reasonable minds could not draw different inferences from the evidence, we may determine the facts as a matter of law. *Bearce v. FMC Corp.*, 465 N.W.2d 531, 534 (Iowa 1991). The record clearly reflects that the work-related aggravation of Honeywell's psychological disorder caused psychological impairment. There was no contrary evidence. All three medical experts expressed opinions as to the resulting industrial disability.

Dr. Sauer was asked, "What is the percentage of impairment of the body as a whole as a result of his [Honeywell's] injury on February 5, 1983?" Dr. Sauer stated there would be a fifty-five percent impairment to the whole body.

Dr. Bost, who had evaluated Honeywell on three separate occasions in 1989 and 1990, found Honeywell "appears to be having serious anxiety symptoms." Test results and Honeywell's medical history pointed strongly to the presence of a personality disorder. His medical history also supported a diagnosis of a substance abuse disorder. In the doctor's opinion, the trauma on May 5, 1983, "may have precipitated an acute worsening" of his preexisting personality disorder and substance abuse disorder. In his view, the collective impairment was moderate to severe, fifty-five percent to seventy-five percent. Dr. Bost stated in his report that Honeywell's personality disorder "almost certainly impairs his ability to relate successfully to co-workers," and that this personality disorder is a major factor in Honeywell's underemployment.

Dr. Graham, a psychologist employed by the insurer and employer, testified that he had examined Honeywell and reviewed his extensive medical records. He concluded "the work-related accident does appear to have played an aggravating role in terms of his drug use and antisocial behavior, but quantitatively, the aggravation does not appear great." He testified that the degree of Honeywell's disability—his psychological impairment—was something in the twenty-to-thirty percent range; this being in addition to any physical impairment resulting from the amputation.

V. *Conclusion.*

The commissioner's finding that the injury to Honeywell aggravated his preexisting substance abuse disorder and personality disorder is supported by substantial evidence. As a matter of law, Honeywell has established a psychological impairment and loss of earning capacity as a result of the work-related injury. The commissioner erred in finding that claimant's award for injury and impairment is limited to the scheduled amount for the right upper extremity.

Because the issue relating to additional healing period benefits was not addressed by the district court and was not properly preserved and raised by the employee, that issue

has been waived. *Young v. Gregg,* 480 N.W.2d 75 (Iowa 1992).

The district court's decision must be reversed and this case remanded to the commissioner for a determination of industrial disability benefits.

**REVERSED AND REMANDED.**