**STATE of Iowa, Appellee,**

v.

**Virgil ERBE, Appellant.**

No. 93–1247.

Supreme Court of Iowa.

July 27, 1994.

---

Barry Moranville, West Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Joanne Moeller, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

One issue is raised in this appeal. Can the State of Iowa (State) claim a credit for payments made to an employee under the state's group employee disability program against a workers' compensation award to

the employee for permanent partial disability? The district court, in this judicial review proceeding, held the State was entitled to the credit and reversed the Industrial Commissioner's decision. We affirm.

## I. *Background.*

Virgil L. Erbe, Jr. started his employment as a groundskeeper with Iowa State University (ISU) in April 1975. He eventually was promoted to the position of arborist. He was injured in July of 1984 while removing a tree on the college campus. As a result of his injury he underwent back surgery in February of 1985. Following a period of recuperation he returned to his employment. In May of 1986 he reinjured his back while involved in a cleanup on the campus following a wind storm. Following a second surgery on his lower back he returned to work in July of 1986 with restrictions. Because of continuing pain Erbe again had surgery on his back in September of 1988. Although he was released to return to work in January of 1989, he was unable to perform his duties and was sent home by his supervisor.

Erbe filed a claim for workers' compensation benefits for the May 1986 injury. The State voluntarily paid permanent partial disability benefits of $241.49 per week for seventy-five weeks in 1988 and 1989.

Erbe also made a claim for benefits under the state's long-term disability insurance program which is paid by the state but is administered by Principal Financial Group under a policy issued to ISU. As a totally disabled state employee he received monthly income payments from April 1989 to October of 1990. These payments were not reduced by payments he received under workers' compensation. The total amount paid to Erbe under the long-term disability plan was $20,078.99.

Erbe returned to work for ISU as a groundskeeper in November of 1990. He was thirty-eight years old and working for ISU as a groundskeeper at the time of the hearing before the Deputy Industrial Commissioner on April 2, 1991.

The Deputy Commissioner found Erbe sustained a twenty-five percent permanent partial disability as a result of the May 1986 injury. This award entitled him to recover 125 weeks of compensation, an award which was fifty weeks more than had been voluntarily paid to him. The Deputy Commissioner found the unpaid award was due and the State was ordered to pay Erbe the sum of $12,074.50 plus interest. The Deputy Commissioner also concluded the employer was not entitled to a credit under Iowa Code section 85.38(2) (1989) for payments made to Erbe under the employee disability program. On appeal the Industrial Commissioner (Commissioner) affirmed the deputy's decision and adopted that decision as final agency action.

The State then filed a petition for judicial review in district court challenging the Commissioner's decision. The State made no claim that it was entitled to a return of the workers' compensation voluntarily paid to Erbe. It asked that a credit for the amount paid under the state employee disability program be made against the additional partial disability award of $12,074.50. The court concluded the State was entitled to a credit against the unpaid workers' compensation benefits.

Erbe appeals from the court's ruling. He urges subsection 85.38(2) does not provide a credit when the workers' compensation benefits are for other than lost time and that section 79.20 does not provide for recoupment.

## II. *Scope of Review.*

 This is a judicial review of the Commissioner's decision. *See* Iowa Code § 86.26. Our review, like that of the district court, is for correction of errors at law, not de novo. *Honeywell v. Allen Drilling Co.*, 506 N.W.2d 434, 435 (Iowa 1993). Because "law issues are determinable by the judiciary alone, we owe an agency only limited deference on matters of law, including statutory interpretation." *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987) (citation omitted). Questions concerning the interpretation of Iowa Code chapters 85 and 79 are law issues for this court. *See Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993).

III. *Workers' Compensation Credits.*

Iowa Code subsection 85.38(2) provides in part:

2. Credit for Benefits Paid Under Group Plans. In the event the disabled employee shall receive any benefits, including medical, surgical or hospital benefits, under any group plan covering nonoccupational disabilities contributed to wholly or partially by the employer, *which benefits should not have been paid or payable if any rights of recovery existed under this chapter,* ... then such amounts so paid to said employee from any such group plan *shall be credited to or against any compensation payments,* including medical, surgical or hospital, made or to be made under this chapter. . . .

(Emphasis added.) Erbe argues a credit to or against workers' compensation payments may be made only if the benefits paid under the group plan should not have been paid. Because payments under the group plan were properly made, he urges no credit should be allowed. He claims the group plan, as stated in the policy, specifically allows only the workers' compensation benefits paid for loss of time to be deducted from the total disability payment. Since the workers' compensation award to Erbe is for permanent partial disability, not for loss of time, he urges the State is not entitled to a credit.

The State argues Iowa Code section 79.20 establishes the terms of the group plan, and under the statute's terms the monthly disability benefits are reduced by any workers' compensation payments, including payments for permanent partial disability. Because no deduction was taken for the workers' compensation payments, the State claims Erbe received disability benefits that should not have been paid to him. Therefore, the State urges credit against the unpaid partial disability award is allowed. To resolve this issue we must review the state employee disability program.

IV. *State Employee Disability Program.*

Iowa Code section 79.20 (1989), now section 70A.20 (1993), provides in part:

A state employees disability insurance program is created, which shall be adminis- tered by the director of the department of personnel and which shall provide disability benefits in an amount and for the employees as provided in this section. The monthly disability benefits shall provide twenty percent of monthly earnings if employed less than one year, forty percent of monthly earnings if employed one year or more but less than two years, and sixty percent of monthly earnings thereafter, *reduced by* primary and family social security determined at the time social security disability payments commence, *workers' compensation if applicable,* and any other state sponsored sickness or disability benefits payable.

(Emphasis added.) In providing for a state employees disability program, ISU secured a disability policy for the administration of the plan. Under this policy Erbe was entitled to monthly income payments of "the sum of: (a) 75% of the first $1000 of monthly compensation; plus (b) 60% of any monthly compensation in excess of $1000." Income from other specified sources is credited against the monthly income payments which accrue under the policy. The policy specified:

Income from other sources shall be ... (b) any payment for which you are eligible under a Workers' Compensation Act or other similar legislation or under any plan (including compulsory plans) providing benefits for loss of time from employment to which the University contributes or makes payroll deductions. . . .

The Commissioner recognized section 79.20 required the state to provide its full time employees with a disability program, but found the state was not prohibited from providing its employees with benefits which are consistent with, but more favorable than those provided by the statute. The Commissioner concluded that where the state agreed to a plan that did not offset permanent partial disability compensation benefits, the state could not claim a credit under section 85.38(2).

The district court interpreted section 79.20 to require disability payments to be reduced by workers' compensation payments without distinction among the various categories of

workers' compensation benefits. The court found where a policy and the statute conflict, the statute controls. The court held the Commissioner erred at law in allowing the policy language to prevail over the relevant statute.

■ We agree the state's disability plan may provide benefits beyond those required by section 79.20. However, we do not agree the disability plan, as expressed in the ISU disability policy, deprives the State of the credit provided by subsection 85.38(2). Nor do we agree with Erbe's argument that the State could only claim the credit for workers' compensation paid as a deduction of income from other sources when determining the monthly disability income payments.

■ We construe the language of a statute in light of the legislative purpose. "When more than one statute is pertinent to the inquiry, we consider the statutes together in an attempt to harmonize them." *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989). We conclude section 85.38 was adopted for the purpose of avoiding a double recovery by a disabled employee who receives benefits under both workers' compensation and a group disability plan provided by the employer. As a part of an overall system of wage protection, duplication of benefits from workers' compensation and other parts of the system should not ordinarily be allowed. *See* 4 Larson, *Workers' Compensation Law* § 79.00, at 18–19 (1993). Iowa's employee disability program is a part of the overall system and the general rule to avoid duplication of benefits should apply. We affirm.

**AFFIRMED.**