**ALUMINUM COMPANY OF AMERICA, Appellee,**

v.

**Richard QUINONES, Appellant.**

**No. 93–760.**

Supreme Court of Iowa.

Sept. 21, 1994.

Michael W. Liebbe of M.W. Liebbe Law Office, Davenport, for appellant.

Thomas N. Kamp and Carole J. Anderson of Lane & Waterman, Davenport, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

This case presents our first opportunity to interpret the statutory waiver provision of Iowa Code section 85.55 (1991). We must determine what effect a statutory waiver of benefits has on a workers' compensation benefit claim and what is required to revoke a waiver. The district court, in this judicial review proceeding, held the waiver signed by the parties and approved by the industrial commissioner bars the claimant from collecting workers' compensation benefits. We affirm.

### I. *Background.*

Richard Quinones began working for Aluminum Company of America (Alcoa) in 1965. In 1967 he underwent surgery (lumbar laminectomy) on his lower back (the L4–5 level) to repair a herniated disc after he was seriously injured in a car accident while on vacation. The accident and surgery left permanent scarring, weakness and instability in his lower back.

Quinones was prepared to return to work in January 1968. Before returning to work at Alcoa, he signed a written agreement waiving compensation for any injury sustained while employed by Alcoa which may occur directly or indirectly because of the physical defect. The waiver described the defect as "residual weakness as a result of surgery for a herniated nucleus pulposus." Attached to the waiver was an acknowledgment of physical condition which stated in part:

I, Richard R. Quinones, do hereby acknowledge that during September of 1967 I underwent surgery for a herniated nucleus pulposis.

In view of such, I understand and agree that for the present my work activity with Alcoa is to be restricted to a 25 lb. limit with respect to lifting and that I further will not be assigned work which involves repeated twisting or stooping. I understand and agree that in the future, as my attending physician, William D. Reinwein, M.D., and the Alcoa medical department review my physical progress, the foregoing restrictions may be modified or eventually lifted.

In 1973, the work restrictions were changed, allowing him to lift fifty pounds. In 1977, all work restrictions were lifted. Quinones initiated the lifting of the restrictions because he wanted to take another job at Alcoa. Quinones has experienced back injuries seven times since 1976, including the injuries at issue here. On two occasions he lost work time because of lower back pain he suffered while engaged in simple household tasks.

Three separate work related injuries are at issue in this case. All three injuries involve the same disc space in his lower back that was operated on in 1967. The injuries occurred while Quinones was lifting, carrying, or pulling objects. The first injury occurred on November 11, 1986. Quinones missed a month and one-half of work, and was once again put on a twenty-five pound weight restriction when he returned to work. The second injury occurred on May 19, 1988. He returned to work after completing a work hardening program. The twenty-five pound weight restriction was still in effect. After the third injury, which occurred on September 28, 1989, Quinones was unable to return to work because his doctor imposed an additional restriction that he not reach above shoulder height. There were no positions available at Alcoa which he could perform under these restrictions. Alcoa did pay for vocational rehabilitation for him. Quinones retired from Alcoa and receives a monthly pension plus medical and health insurance benefits from Alcoa. He now works part-time as a security guard for another employer. The security guard job pays a lower

hourly rate than he earned while working for Alcoa.

Quinones brought a proceeding in arbitration claiming workers' compensation benefits for the injuries to his lower back. Alcoa asserted the waiver under section 85.55 as a defense. The deputy industrial commissioner found the injuries were not a direct or indirect result of the defect in Quinones' back, but rather an aggravation of a preexisting condition. The deputy commissioner awarded him forty percent permanent partial disability for the September 1989 injury and temporary benefits for the 1986 and 1988 injuries. Alcoa appealed to the industrial commissioner who affirmed the deputy commissioner's arbitration decision.

Alcoa filed a petition for judicial review with the district court. Quinones requested the court to increase his disability award to seventy percent permanent partial disability. The court granted Alcoa's motion to dismiss this attempt to increase the award. On review, the district court reversed the industrial commissioner's ruling and denied benefits to Quinones.

On appeal, Quinones argues the section 85.55 waiver does not cover his injuries because the injuries are not directly or indirectly related to the defect in his lower back. In the alternative, Quinones urges that the waiver was voided by lifting the restrictions in 1977. In addition to requesting that we reverse the court's denial of benefits, Quinones seeks to have the commissioner's award raised to seventy percent permanent partial disability.

## II. Standard of Review.

Judicial review of the industrial commissioner's decision falls under Iowa Code chapter 17A. See Iowa Code § 86.26 (1993). Our review, like that of the district court, is for correction of errors at law, not de novo. Honeywell v. Allen Drilling Co., 506 N.W.2d 434, 435 (Iowa 1993). Issues of law are determined by the judiciary, and we owe only limited deference to an administrative agency. Norland v. Iowa Dep't of Job Serv., 412 N.W.2d 904, 908 (Iowa 1987). Issues concerning the interpretation of Iowa's workers' compensation statute are questions of law for

this court. Mortimer v. Fruehauf Corp., 502 N.W.2d 12, 14 (Iowa 1993).

## III. Statutory Waiver.

Iowa Code section 85.55 provides:

No employee or dependent to whom this chapter applies, shall have power to waive any of the provisions of this chapter in regard to the amount of compensation which may be payable to such employee or dependent hereunder. However, any person who has some physical defect which increases the risk of injury, may, subject to the approval of the industrial commissioner, enter into a written agreement with the employee's employer waiving compensation for injuries which may occur directly or indirectly because of such physical defect, provided, however, that such waiver shall not affect the employee's benefits to be paid from the second injury fund under the provisions of section 85.64.

In interpreting the workers' compensation statute, our ultimate goal is to determine and effectuate the intent of the legislature. Beier Glass Co. v. Brundige, 329 N.W.2d 280, 283 (Iowa 1983) (citations omitted). In determining the legislative intent we "look to the object to be accomplished, the mischief to be remedied, or the purpose to be served." Id. We then attempt to effect the legislature's intent by placing a reasonable or liberal construction on the statute. Id. The spirit of the statute must be considered along with its words. Id.

We believe the legislature enacted the waiver provision of section 85.55 for the same purpose that it created the second injury fund. See Iowa Code §§ 85.63–.69. The intent of the second injury fund was to encourage employers to hire disabled workers. Second Injury Fund v. Neelans, 436 N.W.2d 355, 358 (Iowa 1989); Anderson v. Second Injury Fund, 262 N.W.2d 789, 791 (Iowa 1978).

Iowa's workers' compensation law permits employees to recover for disability resulting from the aggravation of a preexisting defect or condition. See, e.g., Honeywell, 506 N.W.2d at 437; Ziegler v. United States Gypsum Co., 252 Iowa 613, 620, 106 N.W.2d

591, 595 (1960); *Hanson v. Dickinson,* 188 Iowa 728, 732, 176 N.W. 823, 824 (1920). Permitting recovery for aggravation of a preexisting defect potentially discourages employers from hiring workers with preexisting defects. We believe the waiver provision of section 85.55 was enacted to encourage employers to hire disabled workers. *See* 2 Arthur Larson, *The Law of Workmen's Compensation* § 59.31(a) n. 50 (1993) (statutes expressly permitting disabled workers to waive future compensation attributable to a preexisting condition are another attempted solution to the problem of employers' reluctance to hire disabled workers).

■ In awarding forty percent permanent partial disability, the deputy commissioner, whose arbitration decision was adopted by the commissioner, determined that the section 85.55 waiver did not preclude recovery because "[t]he compensable injuries in this case are not a direct or indirect result of a claimant's physical defect, but an aggravation of a preexisting condition which the Iowa Supreme Court has consistently held to be compensable." The commissioner's interpretation of the waiver provision of section 85.55 makes a distinction between injuries that are a "direct or indirect result of a physical defect" and an "aggravation of a preexisting condition." We disagree with the distinction and hold that a section 85.55 waiver applies to relieve the employer of liability for aggravation of a preexisting condition where that condition was embraced within the waiver. The deputy commissioner found the injuries to be an aggravation of Quinones' preexisting condition, and the medical evidence indicates the injuries were related to the original 1967 accident and surgery.

Because we believe the waiver provision was enacted to encourage the hiring of disabled workers by providing employers with an avenue to avoid liability for aggravation of a worker's preexisting defect, we hold the commissioner's interpretation of section 85.55 to be in error. The 1967 waiver signed by the parties covered the injuries to Quinones' lower back.

## IV.  *Voiding of Statutory Waiver.*

■ Quinones argues that even if the section 85.55 waiver did apply to the type of injuries he suffered, the waiver was voided when Alcoa removed his work restrictions in 1977. Quinones asserts that he gave the waiver in exchange for the protection of the work restrictions that were attached to the waiver. Therefore, once the work restrictions were removed, the bargain was taken away and the waiver was void.

We disagree with his conception of the agreement. The waiver was given in exchange for the job with Alcoa. Without the waiver, Alcoa would not have permitted him to return to work with the company because to do so would expose Alcoa to a greater risk of liability. Also, the waiver contemplated that the work restrictions might be modified or removed, but did not indicate that the lifting of the restrictions would result in a release of the waiver. The increased risk of injury due to the weakness and scarred condition of his lower back was permanent and remained even after the work restrictions were lifted.

There was no written agreement to remove the waiver. Nor was there any indication that the parties mutually intended to revoke the waiver. To show abandonment of an agreement requires proof of an unequivocal and decisive act of relinquishment. *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376, 380 (Iowa 1983) (citation omitted). Quinones has not proven an act of relinquishment of the waiver. Also, section 85.55 requires a written waiver and the approval of the industrial commissioner before a waiver takes effect. In light of the formality required to institute a waiver under section 85.55, we believe that the intent to revoke the waiver must be shown by clear evidence.

Quinones' waiver of compensation for injuries arising out of the defect in his lower back remained in place at the time of each of his three work related back injuries. We find the district court correctly denied his claim that the waiver had been voided.

Because we find the waiver bars him from recovering any compensation for his injuries,

we need not address his request to increase the disability award.

**AFFIRMED.**