Danae McCORMICK, Appellee,

v.

NORTH STAR FOODS, INC. and Kemper Group, Insurance Carrier, Appellants.

No. 94–619.

Supreme Court of Iowa.

May 24, 1995.

Craig A. Levien, Deborah A. Dubik, and Vicki L. Seeck of Betty, Neuman & McMahon, Davenport, for appellants.

Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LARSON, Justice.

Danae McCormick injured her foot in the course of her employment with North Star Foods, Inc. North Star offered light-duty work to her, but she refused. Pursuant to Iowa Code section 85.33(3) (1991), North

Star's insurer, Kemper Group, ceased payment of healing-period and temporary partial disability benefits. Later, when McCormick refused to attend an independent medical examination, benefits were suspended pursuant to Iowa Code section 85.39. The district court affirmed the sanctions as prescribed by the industrial commissioner. North Star appealed, arguing that section 85.39 requires a forfeiture of benefits rather than a suspension. McCormick cross-appealed on the propriety of imposing sanctions for refusing the work offered to her. We affirm on both appeals and remand.

The facts in the case are undisputed. The case involves interpretation of two statutes imposing sanctions on workers' compensation claimants: Iowa Code section 85.39 (sanction for failure to attend independent medical examination) and section 85.33(3) (sanction for failure to accept "suitable" work consistent with worker's disability).

McCormick was injured on September 19, 1990. She was referred to a Dr. Abbott, who eventually released her to light-duty, part-time work at North Star. McCormick quit her job at North Star on January 11, 1991. Her stated reasons were that she continued to have pain in her foot, and she objected to the long working hours at North Star. In addition, she was experiencing problems with commuting and in meeting the demands of child care.

McCormick began to work for a Kum & Go convenience store on January 20, 1991, and worked there for approximately four months. On April 29, 1991, she began working for Sara Lee Bakeries. Approximately a week after she started working at Sara Lee, McCormick discovered she was pregnant. She continued to work at Sara Lee through the summer of 1991, but by September 4, 1991, she took disability leave, and her temporary total disability benefits were reinstated.

Dr. Abbott released McCormick to light-duty work, and North Star offered to take her back on that basis. She refused, stating that she preferred to stay with Sara Lee. She also testified that she did not want to return to work at North Star because the hours were not regular, she did not receive regular raises, and the commuting distance was too great.

On January 21, 1992, Dr. Johnston set McCormick's impairment at four percent of her lower extremity. North Star's insurer arranged for an examination by a Dr. Robb, but McCormick refused to attend. The insurer again asked McCormick to attend the appointment and advised her of the consequences of failing to do so. *See* Iowa Code § 85.39. McCormick again refused to attend the examination. She later agreed to the independent examination, but Dr. Robb was no longer performing medical evaluations by that time.

A deputy industrial commissioner concluded that McCormick had unreasonably refused light-duty work offered by North Star and therefore should be denied both temporary partial disability and healing-period benefits for the period of the refusal, pursuant to Iowa Code section 85.33(3). In addition, because McCormick had unreasonably refused to submit to a medical examination, she was to be denied permanent partial disability benefits, pursuant to Iowa Code section 85.39.

The industrial commissioner affirmed the denial of temporary partial disability and healing-period benefits under section 85.33(3), but reversed the deputy's determination that McCormick had forfeited her permanent partial disability benefits because of her refusal to submit to a medical examination under section 85.39. The industrial commissioner ruled that those benefits were only suspended, not forfeited.

McCormick filed a motion under Iowa Rule of Civil Procedure 179(b) requesting the commissioner to enlarge the findings to (1) define the period she refused to see Dr. Robb, so that interest could be calculated; (2) make a finding on when the permanent partial disability payments became due; and (3) require defendants to pay the costs of appeal. Kemper filed a petition for judicial review before the industrial commissioner had the opportunity to rule on McCormick's 179(b) motion.

The industrial commissioner considered the rule 179(b) motion and made findings as

to the relevant dates for the purposes of calculating interest. He charged North Star and Kemper with the costs of appeal. The commissioner, however, qualified his ruling "to the extent this agency retains jurisdiction to rule on the motion." (The district court later ruled that the industrial commissioner had lost jurisdiction on the rule 179(b) motion because of the intervening petition for judicial review.)

■■■ Judicial review of an industrial commissioner's decision falls under Iowa Code chapter 17A (1991). *See* Iowa Code § 86.26 (1991). Our review, like that of the district court, is for correction of errors at law, not de novo. *Aluminum Co. of Am. v. Quinones*, 522 N.W.2d 63, 65 (Iowa 1994); *State v. Erbe*, 519 N.W.2d 812, 813 (Iowa 1994); *Honeywell v. Allen Drilling Co.*, 506 N.W.2d 434, 435 (Iowa 1993). Issues of law are determined by the court, and we give only limited deference to the interpretation of an administrative agency. *Quinones*, 522 N.W.2d at 65; *Erbe*, 519 N.W.2d at 813; *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987).

I. *The Sanction of Iowa Code Section 85.39.*

Iowa Code section 85.39 provides:

After an injury, the employee, if requested by the employer, shall submit for examination at some reasonable time and place and as often as reasonably requested.... The refusal of the employee to submit to the examination shall suspend the employee's right to any compensation for the period of the refusal. Compensation shall not be payable for the period of the suspension.

■■ The juxtaposition of the last two sentences creates the controversy here. The first provides that "[t]he refusal of the employee to submit to the examination shall *suspend* the employee's right to any compensation for the period of the refusal." (Emphasis added.) The second sentence provides that "[c]ompensation shall not be payable for the period of suspension." The second sentence could be read as calling for either a suspension or a forfeiture. The worker, of course, argues for the first inter-

pretation, while the employer argues for the latter.

Suspension, not forfeiture, seems to be a common sanction in this situation. For example, it is said that

the refusal of an employee to submit to a proper examination requested by the employer or ordered by the court or commission, will result in the *suspension* of his right to compensation during the time he persists in such refusal. *Such provisions must be strictly construed;* there must be full compliance with the requirements essential to the imposition of a penalty; and, where it appears that the employee did in fact submit, compensation will not be refused.

100 C.J.S. *Workmen's Compensation* § 484, at 423–24 (1958) (emphasis added) (footnotes omitted).

Also,

[a]n injured employee may generally be required at the request of his or her employer, or the employer's insurer, to undergo a medical examination in order to ascertain the existence or extent of disability or incapacity for the purpose of determining the amount of compensation, if any, to which the worker is entitled. Refusal to undergo such an examination without a reasonable excuse may result in *suspension* of the worker's right to compensation.

82 Am.Jur.2d *Worker's Compensation* § 504, at 499 (1992) (emphasis added) (footnotes omitted).

■■ We believe that both parties have presented plausible interpretations of section 85.39. The general rule is that workers' compensation statutes are to be construed liberally in favor of the worker. *See Manpower Temporary Servs. v. Sioson*, 529 N.W.2d 259, 262 (Iowa 1995); *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). And, as previously mentioned, sanctions in workers' compensation cases should be strictly construed. 100 C.J.S. *Workmen's Compensation* § 484, at 423–24.

We conclude that the industrial commissioner and the district court correctly interpreted and applied section 85.39 by holding that this worker's compensation benefits

were suspended, not forfeited, during the period of her refusal to submit to the independent medical examination. We are mindful of the concern that employers need an adequate sanction to enforce their statutory right to independent medical examinations. We believe, however, that suspension of workers' compensation benefits, especially over a long period of time, is a significant disincentive for a worker to refuse.

### II. *Forfeiture of Healing–Period and Temporary Partial Disability Benefits.*

The industrial commissioner denied the worker's claim for healing-period and temporary partial disability benefits for the period of September 30, 1991, through January 21, 1992. The commissioner concluded that the worker had refused suitable work at North Star and therefore had surrendered her right to healing-period and temporary partial disability benefits.

> If an employee is temporarily, partially disabled and the employer for whom the employee was working at the time of injury offers to the employee suitable work consistent with the employee's disability the employee shall accept the suitable work, and be compensated with temporary partial benefits. If the employee refuses to accept the suitable work the employee shall not be compensated with temporary partial, temporary total, or healing period benefits during the period of refusal.

Iowa Code § 85.33(3).

McCormick claims that the work offered by North Star was not "suitable" because it would have cost her the job she preferred at Sara Lee. She argues that North Star could not be trusted to honor Dr. Abbott's light-duty work restriction and that jobs at North Star were not secure due to layoffs and rumors that the plant would close.

The commissioner found that the light-duty work proposed by North Star was suitable. Substantial evidence supports this decision. *See Dunlavey v. Economy Fire & Casualty Co.,* 526 N.W.2d 845, 849 (Iowa 1995) (evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion). The proposed work was approved by McCormick's examining doctor, and there was evidence that her employer would insure that the work would be consistent with McCormick's disability.

### III. *Disposition.*

The industrial commissioner found the necessary dates for determination of the interest on the late-paid benefits and on the assessment of costs. The district court, however, ruled that the petition for judicial review deprived the commissioner of jurisdiction to rule on those matters.

We remand on the section 85.39 issue for the district court to determine the dates necessary to compute the benefits and interest to which McCormick is entitled and the assessment of costs. If the parties so stipulate, the court may simply incorporate the facts as found by the industrial commissioner on the rule 179(b) motion. If the parties fail to stipulate, the court shall remand these matters to the commissioner to make the necessary findings and then certify them to the district court. In all other respects, the decision of the district court is affirmed.

**AFFIRMED ON EMPLOYER'S AND INSURER'S APPEAL; AFFIRMED AND REMANDED ON WORKER'S CROSS-APPEAL.**